

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

APR  4 2005

CLERK, U.S. DISTRICT COURT
By _____
    *Deputy*

N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RECURSION SOFTWARE, INC., §
    Plaintiff, §
  §
  §
v. § CIVIL ACTION NO.  3:03-CV-2711-R
INTERACTIVE INTELLIGENCE, INC., §
  §
    Defendant. §

### DEFENDANT INTERACTIVE INTELLIGENCE INC.'S
### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### Table of Contents

I.   Facts.................................................................................................................1

II.  Procedural History and Summary of Recursion's Claims......................................9

  A.   Recursion's First Complaint: State Law Claims................................9

  B.   Recursion's Second Complaint: Copyright Infringement...................10

  C.   Recursion's Third Complaint: A Second Breach of Contract Theory. ...........10

III.  Summary of Interactive's Defenses. ................................................................11

IV.  Undisputed Material Facts .............................................................................12

V.  Summary Judgment Standard ........................................................................13

VI.  Argument....................................................................................................14

  A.   Recursion's Original State Law Claims Are Preempted by the Copyright Act...............14

  B.   Defenses Applicable to All Claims. .................................................14

    1. Plaintiff's Claims Are Barred By Laches. ...................................14

    2. Plaintiff's Claims Are Barred By Estoppel. .................................16

    3. Plaintiff's Claims Are Barred By Waiver.....................................17

    4. Interactive's Express License Bars Plaintiff's Claims....................18

    5. Interactive's Implied License Bars Plaintiff's Claims ...................18

  C.   Recursion Has No Claim for Acts Occurring Prior To Its Acquisition of the Voyager Copyrights.........................................................................19

D.   Additional Defenses to Copyright Infringement Claim.....................................................20

   1. Plaintiff's Copyright Claim is Barred By the Doctrine of Fair Use....................................20

   2. Plaintiff's Copyright Claims Are Barred By the Applicable Statute Of Limitations. .........22

E.   Additional Defenses to Recursion's Second Breach of Contract Theory (Not preventing Persons Under Its "Control" From Packaging Interaction Recorder with "Hardware" Devices)23

   1. Interactive Has No Agreement with Recursion, so there could be no breach ................23

   2. Lack of Consideration. ....................................................................................................24

   3. Even if Interactive Had a Contractual Obligation to Recursion (and it did not) Interactive is Not Liable for Breach of Contract. ..................................................................................24

     a)   There Has Been No "Packaging" of Interaction Recorder with "Devices"............24

     b)   A Non-Party Can Not Breach An Agreement. ....................................................25

     c)   There has been no breach because Interactive does not "control" its resellers. .25

     d)   Recursion's Second Breach of Contract Theory is Barred By the Statute of Limitations. .............................................................................................................26

     e)   Recursion's Second Breach of Contract Claim Fails Because Speculative Damages are Not Recoverable.............................................................................27

   4. Breach of contract – Attorneys fees ...............................................................................28

VII.  Conclusion.............................................................................................................................29

## Table of Authorities

## Cases

*Bass v. Hendrix,* 931 F.Supp. 523, 532 (5th Cir. 1996)...........................................................25

*Bernard Johnson, Inc. v. Continental Constructors, Inc.*, 630 S.W.3d 365, 369 (Tex. App. 1982) ......................................................................................................................................27

*Blum v. Spectrum Restaurant Group, Inc.,* 261 F Supp.2d 697, 717 (E.D. Tex. 2003) .............18

BML *Sage Lighting, Inc. v. Mayflower Transit, Inc.,* 14 S.W.3d 395, 400 (Tex. App. 2000).......27

*Bott v. J.F. Shea Co., Inc.* 299 F.3d 508, 513 (5th Cir. 2002) .................................................18

*Burkhart Grob Luft und Raumfahrt GmbH & Co. KG v. E-Systems, Inc.,* 257 F.3d 461, 467 (5th Cir. 2001) ...............................................................................................................................31

*Butler v. Continental Airlines, Inc.*, 31 S.W.3d 642, 651 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). .........................................................................................................................15

*Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 584, 114 S.Ct. 1154, 1174 (1994)............22

*Carson,* 344 F.3d at 453 ..................................................................................17, 19

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986)...............................13

*Church of Scientology of California v. Cazares,* 638 F.2d 1272 (5th Cir. 1981).........................14

*Citizens National Bank v. Allen Rae Investments, Inc.,* 142 S.W.3d 459, 482 (Tex. App. 2004)30

*Clymore v. U.S.,* 217 F.3d 370, 376 (5th Cir. 2000) ..................................................29

*Compaq Computer Corp. v. Ergonome, Inc.* 387 F.3d 403, 408 (5th Cir. 2004)...................21, 23

*Compaq Computer Corp.,* 210 F.Supp.2d 845, 849 (S.D. Tex. 2002)...........................15, 16, 17

*Compare Daboub v. Gibbons,* 42 F.3d 285 (5th Cir. 1995).......................................................24

*Dickey v. McComb Development Co., Inc.,* 115 S.W.3d 42 (Tex. App. 2003)...........................32

*DSC Communications Corp. v. DGI Technologies, Inc.,* 898 F.Supp. 1183, 1188 (N.D. Tex. 1995), aff'd., 81 F.3d 597 (5th Cir. 1996)...............................................................................23

*Facility Ins. Corp. v. Employers Ins. of Wausau,* 357 F.3d 508, 513 (5th Cir. 2004)...................29

*Jim Howe Homes, Inc. v Rogers,* 818 S.W.2d 901, 905 n. 3 (Tex. App. 1991).........................32

*Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp of Texas,* 20 F.3d 1362, 1371 (5th Cir. 1994). ....................................................................................................................28

*Key Maps, Inc. v. Pruitt,* 470 F. Supp. 33, 39 (S.D. Tex. 1978)....................................................20

*King Empire, Inc. v. Milan Courtyard Homes, Ltd.,* 173 F. Supp.2d 649, 653 (S.D. Tex. 2001) 24

*Kona Technology Corp. v. Southern Pacific Transp. Co.,* 225 F.3d 595, 602 (5th Cir. 2000).....25

*Lefton v. Griffith,* 136 S.W.3d 271, 277 (Tex. App. 2004) ..................................................30, 31

*Llanes v. Davila,* 133 S.W.3d 635, 641 (Tex. App. 2003)........................................................32

*Lulirama Ltd., Inc. v. Axcess Broadcast Servs., Inc.* 128 F.3d 872, 879 (5th Cir. 1997)...........20

*Makedwde Pub. Co. v. Johnson,* 37 F.3d 180 (5th Cir. 1994)....................................................24

*Matsushita Electric Industrial Co., Ltd. 475 U.S..* at 586-87, 106 S. Ct. at 1355-56 .................14

*Medway Ranch, Inc.* 169 F.3d 951, 955 (5th Cir. 1999)........................................................18

*Michaels v. Avitech, Inc.,* 202 F.3d 746 (5th Cir. 2000)............................................................13

National Western Life Ins. Co. v. Rowe, 86 S.W.3d 285, 297 (Tex. App. 2002)........................29

Robert Hageman/Fritz, Byrne, Head & Harrison, LLP v. Luth, 2004 WL 314968 (Tex. App. 2004)..........................................................................................................................................32

Sundeman v. Seajay Society, Inc., 142 F.3d 194, 203 (4th Cir. 1998) ........................................22

Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377 (5th Cir. 2001)...................14

Taquino v. Teledyne Monarch Rubber, 893 F.2d 1488, 1501 (5th Cir. 1990);...........................15

Taub v. Houston Pipeline Co., 75 S.W.3d 606, 613 (Tex App. 2002)........................................29

Texas Soil Recycling, Inc. v. Intercargo Ins. Co., 273 F.3d 644, 649 (5th Cir. 2001).................29

U.S. v. Huff, 175 F.2d 678, 680 (5th Cir. 1949) ..........................................................................31

Vault Corp. v. Quaid Software, Ltd., 847 F.2d 255, 268 (5th Cir. 1988) ...............................22, 23

Veeck v. Southern Bldg. Code Congress Internat'l., Inc., 241 F.3d 398, 409 (5th Cir. 2001)....18

Voest-Alpine Trading USA Corp. v. Bank of China, 288 F.3d 262 (5th Cir. 2002) .....................32

## Statutes

17 U.S.C. § 301 .........................................................................................................................14

17 U.S.C. § 501(b).....................................................................................................................24

17 U.S.C. §107 (2000)...............................................................................................................22

Texas Civil Practice and Remedies Code § 38.001 .....................................................12, 31, 32

Texas Civil Practice and Remedies Code §16.004 ...................................................................28

## I. FACTS

This is case about a Chief Financial Officer who fraudulently transferred assets from the company he worked for to a new corporation he and his wife formed, then used those assets to harass and sue the loyal customers of the original company.[1]

Objectspace's "Big Idea:" Software for "Devices" on the Internet.  In the mid 1990's Objectspace, Inc. (the predecessor to Plaintiff Recursion Software, Inc.) was a software company that made software tools used by other software companies who wrote "end user" software.  Since Objectspace's customers were other software companies, its market was limited, so it came up with a plan to make money another way.  Objectspace believed that someday, all sorts of devices would be connected to the Internet, such as cell phones, pagers, and even toasters and hot tubs. For example, a person could use their cell phone to connect to the Internet and tell their hot tub to turn on so it would be warm when he got home from the office. In this world of the future, these and thousands of other types of everyday devices would require "embedded" Internet communications software so they could communicate with each other via the Internet. (App. 5-8)

Of course, regular *computers* have communicated with each other over the Internet for a long time, using software for things like email and browsing the web.  Software to allow *devices* to communicate with each other over the Internet, though not as popular among consumers, was nonetheless common.  There were many free, public domain software products available to do this at the time.  However, Objectspace thought that it could build a better mousetrap, and convince device manufacturers to embed Objectspace's planned software into their devices instead of the other, free software. (App. 4, 6-7)

_____

[1] The fraudulent transfer has resulted in a suit by the U.S. Government against the CFO and his new company. *Daniel J. Sherman, as trustee of the Chapter 7 Estate of Objectspace, Inc., v. Recursion Software, Inc. and Paul Lipari,* Case No. 02-32943-HCA-7 (USBC – NDTX). (App. 84-91).

Defendant Interactive Intelligence Inc.'s
Memorandum in Support of
Motion for Summary Judgment

<u>Objectspace's Strategy – Free Software.</u>  Objectspace realized there were two big problems with this strategy.  First most software developers were not yet accustomed to writing software for "devices," only general purpose computers like PCs.  Second, if software developers later decided to start writing software for devices, they would want to use software tools they were already familiar with.  To overcome these problems, Objectspace developed a plan: First, it would make its planned software so it could not only be embedded into devices, but could also be used on general purpose computers such as PCs or Macintoshes.  Because there were many more software developers for general purpose computers than for "devices," this strategy would greatly increase the number of developers who could potentially use the software.  Next, Objectspace would "[Give] away [the new software] for free to get wide spread distribution" to software developers, and tell them that they could use it for free for software for general purpose computers. (App 6, 50, 133).  The hope was that they would get lots of software developers to become familiar with the software, and it would become a "standard." (App. 134).  Then, when the market for "embedded" software for "devices" took off, those developers would already be familiar with Objectspace's software and select it to embed into cell phones, hot tubs, and other "devices."  By then, Objectspace hoped to come out with new and improved versions of its software, and would start charging device manufacturers a small royalty for each "device" into which its software was embedded.  Thus, even though there were a limited number of software developers, Objectspace planned to make a small profit from each of the millions of cell phones, toasters, hot tubs and other "devices" that were sold, and that would add up to a lot of money. (App. 6).

<u>Objectspace Asks Interactive For Help.</u>  One thing software companies like Objectspace do when they develop new software is they get help from other software companies.  They give these third parties pre-release versions, and ask them to "test drive" it, fix bugs, and provide feedback.  In exchange, the software manufacturer lets the outside software developers use the

software for free. Objectspace did this, and they contacted Defendant Interactive Intelligence, Inc., an Indianapolis software company ("Interactive") for help. Interactive agreed to help, and sent one of their software developers, Scott Ganyo to Chicago to meet with Graham Glass, Objectspace's co-founder and Chairman, to discuss Objectspace's software. Many other software developers also attended the meeting. At this meeting, Ganyo told Glass that Interactive sold software. Glass described Objectspace's strategy outlined above. Glass also confirmed that persons and companies represented at the meeting were allowed to include Objectspace's new software in their software products, and that Objectspace would not charge them anything as long as they did not embed the software in "devices" such as cell phones or pagers. (App. 6). In fact, in Objectspace's "Marketing Matrix," identified device manufacturers, *not independent software companies like Interactive*, as a target market. (App. 125-126).

Interactive makes software that runs on general purpose computers; it does not sell devices, hardware, or even computers. It is a "pure" software company. However, Interactive's customers install Interactive's software on general purpose computers (as happens with nearly all software), sometimes with the assistance of Interactive's distributors or "resellers." (App. 41-42). Although Interactive has agreements with its resellers, it does not control them or even have exclusive distribution rights. The resellers set their own prices for Interactive's product and sell competing products. Interactive neither owns nor has persons who serve as directors or managers of resellers. (App.142-143).

Objectspace Releases the First Version of Voyager for Free. Objectspace eventually completed a version of its software in 1997 and named it "Voyager v. 1.0." The Voyager User Manual includes an "Acknowledgement" section naming the people that "contributed to the success of the Voyager product," and giving "special thanks" to Interactive's Scott Ganyo. (App. 12)

During this time, Objectspace repeatedly reinforced to Interactive and others that Objectspace was free and could be incorporated into software for general purpose computers (like Interactive's) and distributed free of charge.  In fact, Objectspace's Graham Glass' standard email signature at the time, included in emails he sent to Interactive, was:

graham glass, chairman and CTO
objectspace voyager(tm) - the agent orb for java
**free for commercial use from http://www.objectspace.com**

In addition, Objectspace put out numerous press releases to try to get software developers to use Voyager, such as:

- "The ObjectSpace Voyager Core Technology 1.0.0 and JGL 3.0 are free for most commercial uses from the ObjectSpace website. Use of Voyager in embedded devices or redistribution with hardware is restricted and requires special run-time licensing from ObjectSpace." (C/C++ Users Journal  (App. 16-17)

- Voyager described as "freeware." (App. 18)

- "You can get it (it's free) from http://www.objectspace.com." (App. 19-20)

Also, in minutes from Objectspace CEO David Norris' Advisory Council meeting states:

Business Overview: David

•     Funnel profits from consulting and training into our engineering department.

•     **Gave away Voyager for free to get wide spread distribution.**

*(emphasis supplied)* (App. 133)

From time to time, ObjectSpace clarified its licensing policy for Voyager users via a voyager-interest email group. For example, ObjectSpace assured its users:

- "Core Technology Code and Doc is FREE – ALWAYS

- Beta versions of Core Technology Code are now also FREE – ALWAYS

- We will not add new license restrictions to the Core Technology.

\*\*\*

> . . . Everything that is in the Core Technology . . . will ALWAYS BE FREE per the download license and the few restrictions found therein. . . .

***

> . . . All future releases of the ObjectSpace Voyager Core Technology, both Beta and Production, will ALWAYS BE FREE for most commercial use as specified in the license. We will not add fees nor will we add license restrictions beyond those you have always found in the license."

(Email from Chris Tarr, Voyager Product Manager App. 78-90 ). A later email assured users:

> "The core voyager technology (voyager 1.0, voyager 2.0, voyager 3.0, etc.) will *always* be free for most commercial uses.
>
> ObjectSpace understands that it will be more successful as a company by getting wide adoption of its core technology and get revenue from value-added features that extend this technology.
>
> The only things that ObjectSpace charges for are:
>
> - Technical support
> - Developer program (soon to be announced)
> - Value-added extensions such as the forthcoming enterprise edition
> - Licenses for deploying voyager into devices such as phones, pagers, etc.
>
> You can use voyager to build regular applications and deploy them on traditional computers . . . at no charge. . . ."

Email from Graham Glass; emphasis in original (App. 33-34). This email was sent directly in response to a customer inquiring whether ObjectSpace was committed to its current licensing scheme or whether his company's current use of Voyager would later become subject to licensing fees. *Id.* Objectspace press releases from this 1997-1998 time period confirm that there was no restriction against embedding Voyager into software: "Objectspace Voyager Core Technology is free for most commercial uses from www.objectspace.com. Use of Voyager in

Defendant Interactive Intelligence Inc.'s                    5
Memorandum in Support of
Motion for Summary Judgment

embedded devices for redistribution with hardware is restricted and requires special run-time licensing from Objectspace." (App. 5, 13-15, *See also* App. at 50-57).

Interactive Selects the Free Voyager.  Interactive's corporate policy has always been that it does not use software development tools if those tools would require Interactive to pay royalties on software that it sells.   Had Objectspace suggested to Interactive that using Voyager would subject Interactive to licensing fees, Interactive would not have used Voyager in the Interaction Recorder software.  (App. at 8, 43-44).   However, relying on Objectspace's representations that Voyager could be included in its software and distributed for free, Interactive began a project to incorporate a very, very small part of Voyager to perform a minor function in one of its products called "Interaction Recorder."  (App. 8, 43-44)  Interaction Recorder was to be an optional add-on software module to Interactive's flagship products, "EIC" and "CIC." (App. 42)

Objectspace Consented to Interactive Including Voyager in one of its Products. At one point, Interactive had a question about how Voyager worked, so Scott Ganyo sent an email to Objectspace's technical support department.  In response, Ganyo received a phone call from an Objectspace salesperson.  The woman asked about Interactive's use of Voyager.  Ganyo explained that Interactive intended to use Voyager for a software product it planned on selling.  He also explained that he had been a part of the team that helped develop Voyager.  The salesperson told Ganyo she would check a "grandfathered list" that ObjectSpace had, and put Ganyo on hold.  When she returned to the phone she told Interactive that it was on the "grandfathered" list and confirmed that she confirmed that Interactive would not need any further permission from Objectspace, or have to pay anything to Objectspace.  (App. 7).  This was consistent with the understanding of Objectspace's Director of Marketing, Michael Parker, who confirms that Objectspace "acknowledged and accepted" that independent software companies were using Voyager and that they could "continue using the [Voyager] product for

free." (App. 40 Parker). This policy is further corroborated by representations ObjectSpace had made on its Voyager-interest email list regarding its licensing strategy. (App. at 33-38, 78-83)

Interactive Releases Interaction Recorder.   When Interactive began selling Interaction Recorder, the product included code from Voyager version 2.0.1. The Voyager code contributed a miniscule amount to the Interaction Recorder software. Interaction Recorder has 69,602 lines of software code, and only 26 of these lines (0.04%) reference Voyager. Moreover, Voyager has 1,697 software functions, but Interaction Recorder references only 11 of those functions (0.6%). Thus, only 0.024% (twenty four thousandths of one percent) of the total functionality of Interaction Recorder comes from Voyager.[2] (App. 41-42).

Interaction Recorder runs on general purpose PCs.  It does not run on devices. Interactive always ships Interaction Recorder on its own, separate CD; it does not ship it pre-installed or embedded on general purpose PCs or on devices. Specifically, with regard to Interaction Recorder, this product is software only and is not sold or marketed by Interactive installed on, embedded in, or packaged with hardware.  (App. 41-42, 142)

Though several distributors resell Interactive's software, none of the software distribution agreements instruct or require the resellers to either install Interaction Recorder on, embed Interaction Recorder in, or package Interaction Recorder with hardware devices.  (App. at 51, 52-67).  The distributors and/or resellers may themselves sell general purpose computers to customers that obtain licenses to Interaction Recorder.  (App. at 57).  However, Interaction Recorder does not work on any hardware devices such as cell phones, pagers, hot tubs or toasters; it only works on general purpose computers.  (App. 23, 42) Moreover, Interaction Recorder is not packaged with hardware devices or even general purpose computers.  *Id.* Indeed, Interaction Recorders is always invoiced directly from Interactive and those invoices do

not contain hardware sales. (App. 157, 174-175). Additionally, the license agreement for use of Interaction Recorder is always between Interactive and the end user. (App. 157). The distributors and or resellers do not sublicense Interaction Recorder on their own. *Id.*

Newer versions of Voyager were released over time. The current version is version. 4.8. (App. 124). Although Interactive never used any version after the 1998 version (version 2.0.1), when Objectspace announced newer versions of Voyager, it confirmed that there would never be any charge for the newer versions to people who obtained Voyager from the beginning. Specifically, Objectspace's Chairman sent Interactive and others an email stating:

> "hi scott,
> the core voyager technology (voyager 1.0, voyager 2.0,
> voyager 3.0, etc.) will *always* be free for most
> commercial uses"
> **and**
> "you can use voyager to build regular applications and
> deploy them on traditional computers such as pcs,
> unix, etc. etc. at no charge." (App. 33)

Objectspace's General Manager told Interactive:

> "First, I want to stress that we will honor our past commitment
> to distribute Voyager "free of charge." (The previous license
> agreement was limited; there were four exceptions to it.) We have
> NO INTENT on charging ANYONE who downloaded our product prior to
> 3/23/98 and is already using Voyager Core Technology per the
> terms and conditions of our previous license agreement. We also
> intend to honor our commitment that ALL future releases of
> Voyager Core Technology will be provided free of charge to those
> who downloaded our products prior to 3/23/98, in accordance with
> our previous license agreement." (App.37)

<u>Lipari's Fraudulent Transfer.</u>  In the summer of 1999, Objectspace hired Paul Lipari as its CFO. Lipari has no personal knowledge of what happened at Objectspace before he was hired. (App. 96) With Lipari at the financial helm, Objectspace encountered financial difficulties

---

[2] After this lawsuit was filed, Interactive removed Voyager from Interaction Recorder and replaced it with other software.

and discussed bankruptcy. (App. 120) In December 2001, Lipari, formed a new company, Recursion Software, Inc. (the Plaintiff), and transferred the majority of Objectspace's assets to Recursion, including the copyrights in the Voyager software. However, Objectspace's rights to assert claims for alleged breaches of Objectspace's license agreements or copyright infringement were _not_ transferred.[3]  (App. 135) Lipari and his wife are the only shareholders of Recursion.  (App. 97) A few days after Objectspace's ninety day bankruptcy preferential transfer period expired on April 1, 2002, Objectspace filed for bankruptcy.  (App. 120) The United States Trustee for the Bankruptcy Court has filed a suit against Paul Lipari and Recursion claiming that the asset transfer was fraudulent.[4]

How This Lawsuit Came About.  In April 2003, Interactive discovered that a nagging bug in the Interaction Recorder software was caused by the Voyager software, and, after learning that Objectspace was no longer around, contacted Recursion for help.  Recursion responded by sending a letter demanding "that Interactive Intelligence immediately obtain a return of all products containing the [Voyager] Software, or any portion thereof, and cease distributing any an all such products."   Interactive informed Recursion that it had been given express permission to use Voyager.  Recursion responded by filing this suit.

## II.  PROCEDURAL HISTORY AND SUMMARY OF RECURSION'S CLAIMS

A.  Recursion's First Complaint: State Law Claims

Recursion's first complaint asserted three state law claims: (a) breach of contract; (b) quantum meruit; and (c) unjust enrichment.  All of these claims are based exclusively on

---

[3] In contrast, the transfer _did_ specifically include a transfer of past and future claims for _patent_ and _trademark_ infringement, ". . .any and all causes of action, claims, demands and other rights for or arising from any infringement, including past, present and future infringements, of said Patents . . . all rights corresponding thereto throughout the world for past, present or future infringement dilution or injury to the associated goodwill of the trademarks" (App 135).

[4] _Daniel J. Sherman, as trustee of the Chapter 7 Estate of Objectspace, Inc., v. Recursion Software, Inc. and Paul Lipari_, Case No. 02-32943-HCA-7 (USBC – NDTX). (App. 84-91).

Defendant Interactive Intelligence Inc.'s
Memorandum in Support of
Motion for Summary Judgment

9

Interactive's distribution of Voyager in Interaction Recorder. Because "distribution" is one of the exclusive rights of a copyright owner and the Copyright Act has a state law preemption provision, Interactive informed Recursion that its state law claims were preempted by the Copyright Act.

###### B. Recursion's Second Complaint: Copyright Infringement.

Recursion responded by filing an Amended Complaint that added a fourth claim for copyright infringement. Interactive moved to dismiss the three common law claims based on preemption. That motion remains pending. Interactive also provided Recursion with documentary evidence referred to above and an affidavit of Objectspace's former Director of Marketing confirming that Objectspace gave Interactive permission to use Voyager.

###### C. Recursion's Third Complaint: A Second Breach of Contract Theory.

Twice rebuffed, Recursion went back to the drawing board for a third time, and came up with a tenuous, albeit creative, new theory. Recursion scrutinized a boilerplate, shrinkwrap license "agreement" it claims was a part of the files downloaded with Voyager, and found two clauses it claims establish a second, non-preempted breach of contract claim.[5] One part of the boilerplate "agreement" states:

> "Licensee agrees . . . to take all necessary steps to ensure that the terms and conditions of this Agreement are not violated by any person or entity under the Licensee's control or in the Licensee's service."

Eight paragraphs later, the "agreement" states:

> "Licensee may distribute . . . Voyager(tm) ("Binaries") provided that: . . . The Binaries are not packaged with, or embedded in, hardware."

---

[5] Interactive claims that obligations of the "boilerplate" license agreement do not apply to it for various reasons, as discussed further below.

These clauses are clearly irrelevant because Interactive does not "package" or "embed" its software in "hardware." Nonetheless, Recursion apparently posits the following imaginative theory:

- Because
  - o Interactive has software distribution agreements with it's resellers, Interactive "controls" its resellers, and
  - o end users *could* buy hardware from some of Interactive's software resellers
- Interactive breached the "agreement" by failing to include in its reseller agreements a specific prohibition against "packaging" Interaction Recorder with hardware if and when a reseller sells Interaction Recorder.

Three months after the deadline for amending pleadings had passed, and two months after the close of discovery, Recursion filed for leave to amend its complaint to add this second breach of contract theory. The Court granted the motion and reopened discovery.

## III. SUMMARY OF INTERACTIVE'S DEFENSES.

All of Recursion's claims are barred by laches, estoppel, waiver, express license.

Recursions original three claims, are preempted by the Copyright Act.

The statutes of limitations have run on the copyright infringement and breach of contract claims.

Recursion is not entitled to recover anything for Interactive's transactions that occurred before Recursion (fraudulently) acquired the Voyager copyrights from Objectspace.

The "fair use" doctrine precludes liability for the copyright claim.

There is no liability for Recursion's second breach of contract claim (Interactive's supposed failure to prevent persons under its "control" from breaching its agreement), because: (a) Interactive has no contract with Recursion; (b) there was no consideration for the

Defendant Interactive Intelligence Inc.'s
Memorandum in Support of
Motion for Summary Judgment

11

"agreement;" (c) there has been no breach; and (d) Recursion's damages are entirely speculative.

Finally, Recursion's claim that it is entitled to recover attorneys fees for breach of contract fails because: (a)  there has been no breach; and (b)  Recursion failed to make a "presentment" of demand (for payment of money) as required by Texas CPRC 38.001.

## IV. UNDISPUTED MATERIAL FACTS

While the above facts provide a contextual overview, the material facts necessary to support this summary judgment motion, all of which are undisputed, are as follows:.

| Undisputed Facts | Appendix Reference |
|---|---|
| 1.  Objectspace informed Interactive verbally and in writing that Voyager was "free for commercial use." | App. 30 |
| 2.  Objectspace told Interactive that it could include Voyager in Interactive's software products that it sold. | App. 6-7 |
| 3.  Interaction Recorder has 69,602 lines of software code, and only 26 of these lines (0.04%) reference Voyager.  Voyager has 1,697 software functions, but Interaction Recorder references only 11 of those functions (0.6%).   Thus, only (0.024% (twenty four thousandths of one percent) of the total functionality of Interaction Recorder comes from Voyager.  Voyager plays only a miniscule part in the Interactive's Interaction Recorder software. | App. 41 |
| 4.  Interactive relied on Objectspace's statements that Voyager was free for commercial use and that it could use Voyager in its software products that it sold without having to pay Objectspace anything. | App. 6-7, 41, 43-44 |
| 5.  Objectspace knew that Interactive used Voyager in an Interactive software product. | App. 7 |
| 6.  Objectspace never objected to Interactive's use of Voyager in the Interactive software product. | App. 7 |
| 7.  Objectspace did not assign to Recursion any causes of action for breach of license agreements or copyright infringement. | App. 135 |

| Undisputed Facts | Appendix Reference |
|---|---|
| 8. Interactive's Resellers are not "in the control or service of" Interactive | App. 142-143 |
| 9. Interactive does not ship or sell any hardware on which Interaction Recorder in installed. | App. 42 |
| 10. Interactive has never packaged or embedded Interaction Recorder with hardware. | App. 42 |
| 11. Recursion never demanded any money from Interactive. | Complaint Ex. E |
| 12. Any end user of the Voyager software could have "simply gone out and downloaded Objectspace's Voyager product" | App. 119 |
| 13. Recursion has suffered no damages | App. 119 |

## V. SUMMARY JUDGMENT STANDARD

Summary judgment is proper in any case where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c), Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact by either (1) submitting summary judgment evidence that negates the existence of a material element of the plaintiff's claim, or (2) showing there is no evidence to support an essential element of the plaintiff's claim. *Id.*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53.

To defeat a motion for summary judgment, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Michaels v. Avitech, Inc.,* 202 F.3d 746 (5th Cir. 2000). To meet its burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co., Ltd. 475 U.S..* at 586-87, 106 S. Ct.

at 1355-56 (quoting Fed. R. Civ. P. 56(e)). *Taita Chemical Co., Ltd. v. Westlake Styrene Corp.,* 246 F.3d 377 (5th Cir. 2001). Defending parties may not defeat a summary judgment motion by manufacturing disputes in issues of material fact. *Church of Scientology of California v. Cazares,* 638 F.2d 1272 (5th Cir. 1981).

## VI. ARGUMENT

### A.  Recursion's Original State Law Claims Are Preempted by the Copyright Act

Recursion's first breach of contract claim, its and the claims for unjust enrichment and quantum meruit are preempted by the Copyright Act.  These arguments are fully set forth in Interactive's pending Motion to Dismiss, filed July 27, 2004, which is incorporated herein by reference.  In summary, the only action of Interactive that Recursion alleges give rise to these first three claims is Interactive's distribution of Voyager in Interaction Recorder.  Since "distribution" is one of the exclusive rights of a copyright owner, and because the Copyright Act preempts similar state law claims, Recursion's original state law claims are preempted. 17 U.S.C. § 301 *Taquino v. Teledyne Monarch Rubber,* 893 F.2d 1488, 1501 (5th Cir. 1990); *Butler v. Continental Airlines, Inc.,* 31 S.W.3d 642, 651 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

### B.  Defenses Applicable to All Claims.

Summary judgment is also appropriate because each of Plaintiff's claims is barred by laches, estoppel, waiver, license and/or the applicable statute of limitations.

#### 1.  Plaintiff's Claims Are Barred By Laches.

Laches focuses on the reasonableness of delay in bringing suit and the seriousness of the prejudice to the accused infringer. *Compaq Computer Corp.,* 210 F.Supp.2d 845, 849 (S.D. Tex. 2002). Here, Plaintiff's intentional delay bars its requested relief.  Plaintiff's unreasonable

and prejudicial delay in informing Interactive of the alleged infringement cuts off Plaintiff's right to sue. Quite simply, Plaintiff has delayed "too long" in suing.

To invoke a laches defense, Interactive must show: (1) Plaintiff delayed filing suit for an unreasonable and inexcusable length of time from a point when Plaintiff knew or reasonably should have known of its claim against Interactive; and (2) Plaintiff's delay materially prejudiced or injured Interactive. *Id.* at 848. In *Compaq*, the plaintiff waited more than **two years** after plaintiff became aware the alleged infringement to notify defendant. *Id.* at 847. The district court correctly held that under the facts and the law defendant was entitled to a laches defense:

> Under the circumstances, the silence of [plaintiffs] concerning their belief that [defendant] was infringing constitutes misleading silence. [Defendant] certainly relied upon that silence because it had no opportunity to take affirmative action to avoid the alleged infringement. [Defendant] was materially harmed, both economically and from an evidentiary standpoint.

*Id.*

Here, the two elements for a laches defense are easily established by the undisputed evidence. First, here Plaintiff waited at least **five years** to file suit. According to Ganyo's affidavit, he told ObjectSpace of the intended use of the Voyager software at the very beginning – even before Interactive began selling copies of Interaction Recorder. (App. 6-7, 43-44). Surely, as compared to the two-year period deemed too long in *Compaq*, a **five-year** unreasonable delay must also be too long for ObjectSpace and/or Plaintiff to wait to notify Interactive of any alleged claim.

For the second prong, the *Compaq* court recognized that "material prejudice may be either economic, that is, loss of monetary investments, incurring damages that might otherwise have been avoided by an earlier suit, or evidentiary, that is, preventing the accused party from presenting a full and fair defense to the merits." *Compaq,* 210 F.Supp.2d at 848-49. Interactive was prejudiced in both ways. For example, Interactive was prejudiced economically by

incurring damages that easily could have been avoided by an earlier suit, or by reasonable

notice that Interactive's conduct violated ObjectSpace's rights.  Had Interactive known of its

alleged infringement, it could have chosen any one of the numerous alternative software

options that performed the same functions as Voyager and were available for free.  (App. 4, 19-

20, 43-40, 59).  Interactive was evidentiarily prejudiced in that Recursion's delay prevents

Interactive from presenting a full and fair defense to the merits.  In the five years that Plaintiff

waited, many witnesses have disappeared, forgotten relevant facts, and destroyed possibly

relevant evidence, all to Interactive's detriment.  Plaintiff sat on its rights and subjected both

itself and Interactive to unnecessary harm.  Thus, summary judgment that *all* of Plaintiff's

claims are barred by laches is appropriate.

### 2.   Plaintiff's Claims Are Barred By Estoppel.

To prove its estoppel defense, Interactive must prove: (1) Plaintiff knew the facts of

Interactive's alleged infringing conduct; (2) Plaintiff intended its conduct to be acted on or acted

such that Interactive had a right to believe that it is so intended; (3) Interactive was ignorant of

the true facts; and (4) Interactive relied on Plaintiff's conduct to its injury.  *Carson,* 344 F.3d at

453.  *See also Compaq,* 210 F.Supp.2d at 849 (stating elements of estoppel as:  (1) claimant,

usually with knowledge of true facts, through misleading conduct leads the accused infringer to

reasonably infer that claimant did not intend to enforce its rights against the accused; (2) the

accused relied upon that conduct or communication; and (3) the accused would be materially

harmed if claimant were later permitted to assert a claim inconsistent with claimant's earlier

conduct).

The elements of estoppel are met here.  For example, ObjectSpace never sought fees

from Interactive.  According to ObjectSpace's own licensing strategy, ObjectSpace never

intended to recover royalties from third parties like Interactive, and ObjectSpace expressly told

Interactive that its inclusion of Voyager in its software would not require royalties to be paid. If ObjectSpace did intend to recover royalties, ObjectSpace was silent as to that intent fully knowing of Interactive's use. Interactive never knew of such intent to claim royalties until Plaintiff's recent litigation. Such inappropriate silence, for such a long time, led Interactive to reasonably infer that ObjectSpace did not intend to enforce any royalty rights against Interactive. Interactive reasonably relied upon such conduct, and Interactive would be materially harmed if Plaintiff is now permitted to assert its unreasonable, oppressive, inequitable and late claim that is totally inconsistent with ObjectSpace's earlier conduct. Thus, summary judgment is appropriate that all of Plaintiff's claims are barred by estoppel.

### 3.   Plaintiff's Claims Are Barred By Waiver.

Additionally, Plaintiff waived any claims against Interactive. As a defense, waiver is a distinct from equitable estoppel, mainly in that it does not require proof of reliance. *Blum v. Spectrum Restaurant Group, Inc.,* 261 F Supp.2d 697, 717 (E.D. Tex. 2003). Waiver is the voluntary or intentional relinquishment of a known right and may be found from intentional conduct inconsistent with claiming a known right. *Id.* at 716; *Bott v. J.F. Shea Co., Inc.* 299 F.3d 508, 513 (5th Cir. 2002). To imply waiver under Texas law, a court must identify conduct that is clear, unequivocal and decisive. *In re Medway Ranch, Inc.* 169 F.3d 951, 955 (5th Cir. 1999).

A right may be waived by inaction. *Veeck v. Southern Bldg. Code Congress Internat'l., Inc.,* 241 F.3d 398, 409 (5th Cir. 2001). Further, a copyright may be waived as the result of a particular act, even if waiver was not the intended result. *Id.* ObjectSpace's conduct in making the software freely available via download, encouraging developers to incorporate Voyager into their products, making posts saying that it is free, being told that Interactive was using it for and not objecting, etc. is further proof that ObjectSpace and Plaintiff waived any claims.

Consequently, summary judgment is appropriate that Plaintiff waived all of its claims against Interactive.

### 4.   Interactive's Express License Bars Plaintiff's Claims

All of Plaintiff's claims fail because Interactive had an express license to use Voyager, and that license was not subject to an agreement to police Interactive's resellers.  As explained in detail in the undisputed facts, Interactive acquired a free copy of Voyager in 1996-1997 and incorporated minor functionality of Voyager into its own Interaction Recorder software with ObjectSpace's knowledge and permission.  Interactive's license was granted per the verbal confirmations of Graham Glass in the Chicago meeting, and by the Objectspace salesperson that spoke with Scott Ganyo.  (App. 6-7).  ObjectSpace's standard license included in the download for Voyager did not prohibit embedding Voyager in other software, as long as Voyager was not embedded in hardware.  (App. at 25-26).  That same licensing criteria extended past March 24, 1998, for all Voyager users who had acquired and were using Voyager as of March 23, 1998.  (App. at 81-82).  Interactive was one such "grandfathered" user, such that it was not prohibited from embedding Voyager into software.  (App. 7). Interactive's only product that uses any of Voyager's functionality is Interaction Recorder, which is software only and is not sold or marketed by Interactive installed on, embedded in, or packaged with hardware.  (App. 41-42).  Interactive was, and has been, legally entitled to use Voyager.

### 5.   Interactive's Implied License Bars Plaintiff's Claims

In the alternative, Interactive had, at a minimum, an implied license to use Voyager as it did without incurring fees.  An implied nonexclusive license to use copyrighted software can be created by the totality of the circumstances.  *See, e.g., Carson v. Dynegy, Inc.* 344 F.3d 446, 451 (5th Cir. 2003) ("it is well-established in this circuit that a nonexclusive implied license need

not be evidenced by a writing; rather, such a license may be implied from conduct or granted orally"); *Lulirama Ltd., Inc. v. Axcess Broadcast Servs., Inc.* 128 F.3d 872, 879 (5th Cir. 1997) ("[u]nder federal law, a nonexclusive license may be granted orally, or may even be implied from conduct. . . . When the totality of the parties' conduct indicates an intent to grant such permission, the result is a legal nonexclusive license...."); *Key Maps, Inc. v. Pruitt,* 470 F. Supp. 33, 39 (S.D. Tex. 1978).

An implied license may be created where a defendant reasonably believed that it had permission to use the work. *Key Maps, Inc.* 470 F. Supp. at 39 (implied license found in light of evidence that permission was granted and never withdrawn, reasonably leading defendant to believe that permission remained to use the copyrighted map). ObjectSpace's conduct in: (1) making the software freely available by download over the Internet; (2) encouraging developers to incorporate it into their products; (3) making posts on Java and related technology web sites, as well as to its own Voyager-interest email group, saying that it is free; (4) discussing with Interactive the intended uses and approving such use; and (5) not objecting to the use, reasonably led Interactive to believe that it had permission to incorporate Voyager into Interaction Recorder, thus generating an implied license. (App. 4-7, 13-15, 39-40, 59, 78-83). In light of this evidence of implied license, the Court should grant summary judgment that Plaintiff's copyright infringement claim fails. *See, e.g., Key Maps,* 470 F. Supp. at 39 (finding evidence of implied license defeats copyright claim).

## C. Recursion Has No Claim for Acts Occurring Prior To Its Acquisition of the Voyager Copyrights

Interactive contends that the above defenses are a complete bar to Recursion's claims. Even if the Court disagrees, the Court should find that Recursion has no claim based on distributions of Interaction Recorder occurring before December 20, 2001, the date Objectspace

(fraudulently) transferred the Voyager copyright to Recursion. Only ObjectSpace, *not* Recursion, has the right to sue for past claims. While the agreement transferred past and future claims of infringement of patents and trademarks to Recursion, no similar provision was made for copyrights or causes of action for breach of contract (App.135).

### D. Additional Defenses to Copyright Infringement Claim

#### 1. Plaintiff's Copyright Claim is Barred By the Doctrine of Fair Use

In February 1998, Interactive began selling Interaction Recorder, which included Voyager version 2.0.1. Voyager plays only a miniscule part in the Interactive's Interaction Recorder software. Interaction Recorder has 69,602 lines of software code, and only 26 of these lines (0.04%) reference Voyager. Moreover, Voyager has 1,697 software functions, but Interaction Recorder references only 11 of those functions (0.6%). Thus, only (0.024% (twenty four thousandths of one percent) of the total functionality of Interaction Recorder comes from Voyager. (App. 41)

Based on these facts, Interactive's use clearly was de minimus and a fair use. Not all copying amounts to copyright infringement. *Compaq Computer Corp. v. Ergonome, Inc.* 387 F.3d 403, 408 (5th Cir. 2004). While commerciality generally weighs against finding fair use, it does not end the inquiry; rather, the fair use determination depends on the totality of the factors considered. *Id.* at 409 – 410. *See Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 584, 114 S.Ct. 1154, 1174 (1994); *Sundeman v. Seajay Society, Inc.,* 142 F.3d 194, 203 (4th Cir. 1998). To determine fair use, Congress has provided a non-exclusive list of factors that must be considered:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the
copyrighted work as a whole; and

(4) the effect of the use on the potential market for or value of the copyrighted
work.

17 U.S.C. §107 (2000);  *Compaq Computer Corp.*, 387 F.3d at 408.

The third statutory factor is the critical one for this Court to analyze Interactive's use.
The Court must consider "the amount and substantiality of the portion used in relation to the
copyrighted work as a whole." *Id.* In *Compaq Computer Corp.*, the copied portions of original
work amounted to four illustrations and seven phrases.  The evidence at trial revealed that
Compaq's work was approximately 100 pages long and contained over 88 photographs.  The
Court held that based on the evidence adduced at trial, the jury could have reasonably
concluded that the minimal portions of original work used in Compaq's work were insubstantial
in relation to the whole.  *Id.* at 410.  *See also, Vault Corp. v. Quaid Software, Ltd.*, 847 F.2d
255, 268 (5ᵗʰ Cir. 1988)(copying of 30 characters out of 50 pages of source code was de
minimus).

Interactive's use was much less than the uses found to be de minimus in both the
*Compaq Computer Corp.* and *Vault Corp.* cases.  The minimal portions that were used in
Interaction Recorder were insubstantial in relation to the whole.  Such de minimus use is a fair
use.  The Court should remember that the doctrine of fair use is in essence an equitable rule of
reason. *DSC Communications Corp. v. DGI Technologies, Inc.*, 898 F.Supp. 1183, 1188 (N.D.
Tex. 1995), *aff'd.,* 81 F.3d 597 (5ᵗʰ Cir. 1996).  It is imminently reasonable to conclude that
Interactive's use of Voyager was de minimus and thus fair use.

A finding of fair use is even more compelling when taking into account the fourth factor,
the effect of the use on the potential market for or value of the copyrighted work.  The version of
Voyager used by Interactive was free, as was similar software that Interactive could have used

instead of Voyager.  Moreover, Interaction Recorder is not used in "devices," which is the

market where Objectspace intended to generate royalties.  Accordingly, Interactive's use of

Voyager has no effect on the "potential market for or value of the copyrighted work," especially

since Interactive has removed Voyager from Interaction Recorder.  To the contrary,

Interactive's use of Voyager furthers the original goal of Objectspace, namely, to get "wide

spread distribution" of Voyager among software developers so it would become a "standard."

Consequently, Plaintiff's copyright claim is barred by the doctrine of fair use.

> 2.  <u>Plaintiff's Copyright Claims Are Barred By the Applicable Statute Of
> Limitations.</u>

Plaintiff's claims are barred, in whole or in part, by the three-year statute of limitations.

Under the Copyright Act, Plaintiff cannot recover damages that allegedly occurred more than

three years prior to filing suit.  17 U.S.C. § 501(b) ("No civil action shall be maintained under the

Copyright Act unless it is commenced within three years after the claim accrued.").

In the Fifth Circuit, there exists a split of authority regarding whether the copyright

statute of limitations bars an action brought more than three years after the claim arose entirely,

or whether it merely limits recovery of damages to the loss incurred in the three-year period

prior to filing suit.  *Compare Daboub v. Gibbons,* 42 F.3d 285 (5th Cir. 1995) (holding a

plaintiff's claims barred by the statute of limitations where the plaintiff had knowledge, and

reason to know, of the infringement acts far earlier than the suit was filed) *with Makedwde Pub.*

*Co. v. Johnson,* 37 F.3d 180 (5th Cir. 1994) (holding copyright holder may recover damages for

infringing acts that occur for the three years prior to the filing of the lawsuit, but nor for earlier

acts).  This Court, thus, could chose to follow *Daboub* and hold that Plaintiff's failure to file suit

within three years of Interactive's first alleged infringement bars its copyright claim in totality.  In

the alternative and at a minimum, the copyright statute of limitations, under a *Makedwde*

interpretation, limits Plaintiff's damages recovery to damages incurred in the three years prior to

suit. *See also King Empire, Inc. v. Milan Courtyard Homes, Ltd.,* 173 F. Supp.2d 649, 653

(S.D. Tex. 2001). Consequently, Interactive moves in the alternative for: (a) summary

judgment that Plaintiff take nothing on its copyright claim; or (b) for partial summary judgment

that Plaintiff's copyright infringement claims be limited to the three years prior to January 29,

2004, the date on which Plaintiff filed its complaint asserting a copyright infringement claim.

### E. Additional Defenses to Recursion's Second Breach of Contract Theory (Not preventing Persons Under Its "Control" From Packaging Interaction Recorder with "Hardware" Devices)

#### 1. Interactive Has No Agreement with Recursion, so there could be no breach

Recursion's second breach of contract theory is fatally flawed. Recursion alleges that

Interactive had a contractual obligation that benefited Recursion (not Objectspace) whereby

Interactive was required to prevent third parties/resellers from packaging Interaction Recorder

with hardware.

However, there is no dispute that Interactive has no agreement *with Recursion*. If there

was no contract, then there can be no breach. Under Texas law, privity of contract is an

essential element for recovery under a breach of contract theory. *Bass v. Hendrix,* 931 F.Supp.

523, 532 (5th Cir. 1996). Only the parties to a contract or a third-party for whose benefit the

contract was made, may sue to enforce rights provided in the four corners of agreement. *Kona*

*Technology Corp. v. Southern Pacific Transp. Co.,* 225 F.3d 595, 602 (5th Cir. 2000). Plainly,

Recursion and Interactive had no contract, Recursion was not a party to and is not in privity of

contract with any relevant agreement with Interactive.

The only possible agreement that existed with Interactive was with Objectspace.

Indeed, Recursion did not even exist until 2001, long after Interactive obtained Voyager.

Accordingly, Interactive is entitled to summary judgment on Recursion's breach of contract

claim.

Defendant Interactive Intelligence Inc.'s
Memorandum in Support of
Motion for Summary Judgment

2.  Lack of Consideration.

The purported obligation of Interactive to refrain from allowing others in its "control" to "package" "hardware" with software is unenforceable, because Interactive received no consideration in exchange for the alleged "obligation."   Interactive received an express license to use Voyager in its software products via the express statements of Graham Glass and the Objectspace salesperson.  Given that license, the "boilerplate" license agreement does not apply to interactive.  The boilerplate document purports to grant a "license" in exchange for a promise to ensure that the license is not breached by persons in the licensee's "control."  However, Interactive *already* had the license it needed; thus, it received no "consideration" for its purported promise to police persons in its "control."  Because Interactive received no consideration for the supposed commitment to control others, it is not bound by that obligation, and Recursion's second breach of contract claim fails.

3.  Even if Interactive Had a Contractual Obligation to Recursion (and it did not) Interactive is Not Liable for Breach of Contract.

In the alternative, and in the unlikely event that the Court determines that Interactive had a contractual obligation to prevent persons in its control from breaching the agreement, Interactive has not breached the contract.  Neither Interactive nor Its Resellers have packaged Interaction Recorder with hardware.  Interactive ships Interaction Recorder on a separate CD, it does not "package" it with hardware; indeed, Interactive does not even sell hardware.

a)  There Has Been No "Packaging" of Interaction Recorder with "Devices"

First, there was no breach because neither Interactive nor its resellers has packaged or embedded Interaction Recorder with "hardware."  While some Interactive resellers pre-install *other* Interactive software on general purpose computers that it sells, *Interaction Recorder* is not pre-installed on hardware, because it is an ancillary "add-on" product that can be installed

on a separate PC.   Moreover, the statements of Objectspace make it clear that the type of

"hardware" to which this limitation applies are "devices," such as hot tubs, cell phones pagers,

and the like, not general purposes computers.  Indeed, Objectspace's statements made it clear

that software for general purpose computers was acceptable (and free):

> "you can use voyager to build regular applications and
> deploy them on traditional computers such as pcs, unix, etc.
> etc. at no charge." (App. 33)

Because Interactive has not sold PCs or devices that contain Interaction Recorder,

Recursion's second breach of contract claim fails.

### b)  A Non-Party Can Not Breach An Agreement.

Moreover, <u>even if</u> some Interactive reseller somewhere had "packaged" Interaction

Recorder with hardware that was sold to an end user, this still would not constituted a breach

*by Interactive*.  This is because the license agreement only purports to place limitations on

Interactive, not its resellers; obviously the resellers have no agreement with Ojbectspace (or

Recursion) so they cannot breach the (non-existent) agreement. A contract binds no one

except the parties to it.  BML *Sage Lighting, Inc. v. Mayflower Transit, Inc.,* 14 S.W.3d 395, 400

(Tex. App. 2000).  Courts cannot bind a nonparty to a contract because the nonparty never

agreed to the contract's terms.  *Id.*  Suit for breach of contract may not be maintained against

person who is not party to contract.  *Bernard Johnson, Inc. v. Continental Constructors, Inc.,*

630 S.W.3d 365, 369 (Tex. App. 1982).   If the purported agreement obligates anyone, it is only

Interactive.  As a matter of law, an Interactive reseller can not breach an agreement to which it

is not a party.  Therefore, Recursion's second breach of contract claim fails.

### c)  There has been no breach because Interactive does not "control" its resellers.

There also has been no breach because Interactive does not "control" its resellers. The sole basis for Recursion's theory is that resellers "package" Interaction Recorder with hardware, and that Interactive "controls" its resellers. However, Interactive does not "control" its resellers. (App. 142-143 It does not set the prices at which they charge for products, nor does Interactive even prohibit them form selling competing products. Because there is no evidence that Interactive "controls" its resellers, Recursion's second breach of contract theory fails.

### d) Recursion's Second Breach of Contract Theory is Barred By the Statute of Limitations.

Recursion's second breach of contract theory also fails the applicable statute of limitations for breach of contract. Under Texas Civil Practice and Remedies Code §16.004, Recursion must bring a breach of contract suit not later than four years after the day the cause of action accrues. *Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp of Texas*, 20 F.3d 1362, 1371 (5th Cir. 1994). The four year statue of limitations expired prior to Recursion making this claim. Interactive began selling Interaction Recorder in February 1999, but Recursion's amended complaint asserting the new breach of contract theory was not filed until November 22, 2004: 22 months after the statute of limitations expired.

Public policy and well-reasoned precedent require that the Court reject Recursion's untimely claims. Statutes of limitation are primarily designed to assure fairness to defendants, and to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence is lost, memories have faded, and witnesses have disappeared. *Clymore v. U.S.*, 217 F.3d 370, 376 (5th Cir. 2000). That is exactly what has happened here.

Under Texas law, a cause of action for breach of contract normally accrues when the breach occurs. *Facility Ins. Corp. v. Employers Ins. of Wausau*, 357 F.3d 508, 513 (5th Cir. 2004). The cause of action for breach of contract accrues when the contract is breached.

*Taub v. Houston Pipeline Co.,* 75 S.W.3d 606, 613 (Tex App. 2002).  That date occurred in February 1999.  In addition, Recursion cannot rely on various rules such as the "discovery" rule or a "continuing wrong" to extend the period.  Those rules are inapplicable here.

The action accrued when Ojbectspace knew, or in the exercise of reasonable diligence should have known, of the wrongful action causing injury.  *Texas Soil Recycling, Inc. v. Intercargo Ins. Co.,* 273 F.3d 644, 649 (5th Cir. 2001).   A plaintiff may rely on the discovery rule only when the nature of the injury is both inherently undiscoverable and objectively verifiable.  National Western Life Ins. Co. v. Rowe, 86 S.W.3d 285, 297 (Tex. App. 2002).  Here, Ganyo, an Interactive employee,  told Objectspace in the late 1990's that it had included Voyager in one of its products.  Also, Interactive's own webpages (that Recursion attached to its complaint) reveal that Interactive used resellers.  Accordingly, the facts giving rise to Recursion's second breach of contract claims were known, discoverable and objectively verifiable to Objectspace / Recursion in the late 1990's.

### e)   Recursion's Second Breach of Contract Claim Fails Because Speculative Damages are Not Recoverable

Even if there was a breach by Interactive (and there was none), Recursion's claim fails because Recursion has suffered no damages.  Recursion speculates that its damages comprise what it's standard license fees would have been had it licensed Voyager to each Interactive customer that purchased Interaction Recorder.  (App. 108)  However, this claim is so wholly speculative, it is unrecoverable.  Remember, the breach Recursion alleges is that Interactive failed to police its resellers.  However, even if Interactive did breach (and it did not), Recursion did not suffer any damages *from that breach*.  Even if Recursion contacted an Interactive customer and demanded a license fee, Recursion admits that the customer could obtain the exact same free version of Voyager the same way that Interactive did, and use it in

accordance with the free license. (App. 119) Alternatively, any end user would be free to use any of the other many free versions of similar software that are available.

A party cannot recover damages based on speculation or conjecture. *Citizens National Bank v. Allen Rae Investments, Inc.,* 142 S.W.3d 459, 482 (Tex. App. 2004). *Lefton v. Griffith,* 136 S.W.3d 271, 277 (Tex. App. 2004)(contract case). Documents and testimony that represent merely conclusory allegations will not support a damages award. *Id.* Speculative damages are not recoverable. U.S. v. Huff, 175 F.2d 678, 680 (5th Cir. 1949). (It was incumbent upon these plaintiffs to adduce some clear and convincing proof of specific losses resulting from defendant's actions, and this they have signally failed to do. ) *Id.* Texas law requires that both the fact of lost profits, and their amount, be established with reasonable certainty. *Burkhart Grob Luft und Raumfahrt GmbH & Co. KG v. E-Systems, Inc.,* 257 F.3d 461, 467 (5th Cir. 2001).

Because Recursion can not establish with "reasonable certainty" that it has suffered any damages, Recursion's second breach of contract claim fails.

### 4. Breach of contract – Attorneys fees

Recursion's claim for attorneys fees for breach of a written agreement under Texas Civil Practice and Remedies Code § 38.001 fails because that statute requires that the claimant first make a presentment of a demand, and none occurred. The letter Recursion claims to constitute presentment is insufficient because it contains no demand for **payment**; it only demands that certain software be returned:

> "Consequently, demand is hereby made that Interactive Intelligence immediately obtain a return of all products containing the Software or any portion thereof, and cease distributing any and all such products." (Second Amended Complaint, Ex. E)

The purported presentment should have contained more. Neither the filing of a suit, nor the allegation of a demand in the pleadings can alone constitute presentment of a claim or a

demand that the claim be paid, for purposes of presentment requirement for recovering attorney fees. *Llanes v. Davila*, 133 S.W.3d 635, 641 (Tex. App. 2003). The word "present" has been defined to mean a demand or request for **payment**. *See Jim Howe Homes, Inc. v Rogers*, 818 S.W.2d 901, 905 n. 3 (Tex. App. 1991).

Recursion failed to meet the standard under § 38.001 et seq. Recursion made no prior demand for **payment**. As a result, Recursion is not entitled to attorney fees. *See also, Voest-Alpine Trading USA Corp. v. Bank of China*, 288 F.3d 262 (5th Cir. 2002). *Robert Hageman/Fritz, Byrne, Head & Harrison, LLP v. Luth,* 2004 WL 314968 (Tex. App. 2004). *Dickey v. McComb Development Co., Inc.*, 115 S.W.3d 42 (Tex. App. 2003).

## VII.    CONCLUSION

**WHEREFORE**, Interactive respectfully requests that this Honorable Court:

A.  Grant Interactive's Motion for Summary Judgment, and

B.  In the event the Court does not fully grant this motion for summary judgment with respect to each claim, grant partial summary judgment:

    1.  With respect to those claims to which Interactive is entitled to summary judgment; and

    2.  With respect to transactions occurring prior to December 20, 2001 (the date Plaintiff allegedly acquired the software at issue);

C.  Award such other and further relief as this Court deems just and proper.

Respectfully submitted,

By: _____
Paul B. Overhauser
**Overhauser Law Offices, LLC**
737 W. Green Meadows Dr., Suite 300
Greenfield, IN 46140-4019

Defendant Interactive Intelligence Inc.'s
Memorandum in Support of
Motion for Summary Judgment

29

Phone: 317-891-1500
Fax: 866-283-8549

**Attorneys for Defendant**

**Additional Counsel for Defendant:**
Michael D. McKinley
Shackelford Melton McKinley,LLP
10100 North Central Expressway, Suite 600
Dallas, Texas 75231
Telephone: 972-490-1400
Direct Fax: 214-696-0699

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was forwarded via first class US
Mail postage prepaid to the following counsel of record on April 1, 2005:

Andrew R. Korn
Korn, Bowdich & Diaz, L.L.P.
4221 Avondale
Dallas, Texas 75219

By: _____

Printed:___ Paul Overhaur _____