IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RECURSION SOFTWARE, INC , | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No  3:03-CV-2711-B-BH |
| | § | ECF |
| INTERACTIVE INTELLIGENCE, INC., | § | |
| | § | |
| Defendant | § | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

Andrew R. Korn
State Bar No  11683150
Attorney-in-charge
John W  Bowdich
State Bar No. 00796233

KORN, BOWDICH & DIAZ, L.L.P
4221 Avondale Avenue
Dallas, Texas 75219
(214) 521-8800 – Telephone
(214) 521-8821 – Telecopy
www.kbdtexas.com

ATTORNEYS FOR PLAINTIFF
RECURSION SOFTWARE, INC.

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS ........................................................................................... ii

INDEX OF AUTHORITIES ...................................................................................... iv

INTRODUCTION .................................................................................................... 1

PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE ................................................ 2

     A. *APPENDIX* FILED IN SUPPORT OF PLAINTIFF'S MOTION
        FOR SUMMARY JUDGMENT ....................................................................... 3

     B. SUPPLEMENTAL *APPENDIX* FILED IN SUPPORT OF
        PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ................................... 5

SCOTT GANYO'S BAD FAITH STATEMENT UNDER OATH ................................... 6

DEFENDANT'S ADDITIONAL FALSE AND MISLEADING STATEMENTS ................ 7

SPECIFIC DENIAL OF DEFENDANT'S ALLEGED "UNDISPUTED FACTS" ............ 10

ARGUMENT & AUTHORITIES ............................................................................... 18

     A. LEGAL STANDARD ................................................................................... 18

     B. COPYRIGHT PREEMPTION DOES NOT APPLY TO PLAINTIFF'S
        COMMON LAW CLAIMS ............................................................................ 18

     C. GENUINE ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT
        ON DEFENDANT'S AFFIRMATIVE DEFENSE OF LACHES, ESTOPPEL,
        WAIVER & LIMITATIONS ........................................................................ 23

     D. GENUINE ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ON
        AFFIRMATIVE DEFENSES OF EXPRESS (ORAL OR WRITTEN) OR
        IMPLIED LICENSE ..................................................................................... 30

     E. PLAINTIFF'S CLAIMS ARE NOT LIMITED TO DECEMBER 21, 2001
        FORWARD, BUT INCLUDE ALL CLAIMS FROM THE INCEPTION
        OF DEFENDANT'S UNAUTHORIZED USE OF VOYAGER .............................. 35

     F. GENUINE ISSUES OF MATERIAL FACTS PRECLUDE SUMMARY
        JUDGMENT BASED ON DEFENDANT'S AFFIRMATIVE DEFENSE

OF THE FAIR USE DOCTRINE............................................................. 37

G. GENUINE ISSUES OF MATERIALS FACTS PRECLUDE SUMMARY
JUDGMENT DENYING PLAINTIFF'S BREACH OF CONTRACT ACTION...................... 40

CONCLUSION ............................................................................................. 50

PRAYER.................................................................................................... 50

CERTIFICATE OF SERVICE.............................................................................. 51

## INDEX OF AUTHORITIES

**CASES**                                                                       **PAGE**

*Acorn Structures, Inc. v. Swantz,*
846 F 2d 923 (4th Cir. 1988) ............... 20

*Adams v. Petrade Int'l, Inc.,* 754 S.W.2d 696
(Tex. App.—Houston [1st Dist.] 1988, writ denied) .......... 49

*Adickes v. S.H. Kress & Co.*
398 U.S. 144, 90 S.Ct. 1598 (1970) ............... 18

*Aloe Crème Laboratories, Inc. v. Francine Co.*
425 F 2d 1295 (5th Cir 1970) ............... 3

*Arch Constr., Inc. v. Tyburec,* 730 S.W.2d 47
(Tex App.—Houston [1st Dist.] 1987, writ ref'd n r e ) ............... 48

*Architectronics, Inc. v. Control Systems, Inc.*
935 F. Supp. 425 (S.D. N.Y. 1996) ............... 20

*Barbour v. Head,* 178 F. Supp. 2d 758 (S.D. Tex. 2001) ............... 27

*Berryhill v. Findeisen,* 1996 Tex. App. LEXIS 4100
(Tex. App.—Austin 1996, no pet.) ............... 29

*Bott v. J.R. Shea Co., Inc.,* 299 F 3d 508 (5th Cir. 2002) ............... 26, 34, 42

*Bowers v. Baystate Techs., Inc.,* 320 F 3d 1317
(Fed Cir 2003) *cert. denied,* 539 U.S. 928 (2003) ............... 20

*Bridgeport Music, Inc. v. Diamond Time, Ltd.*
371 F.3d 883 (6th Cir. 2004) ............... 26

*Cadle Co. v. 1007 Joint Venture,* 82 F.3d 102 (5th Cir. 1996) ............... 37, 41

*Calderone v. U.S.,* 799 F.2d 254 (6th Cir. 1986) ............... 18

*Camacho v. Sullivan Transfer Co.,* 577 S.W.2d 793
(Tex. Civ. App.—Waco 1979, no writ) ............... 29

*Carson v. Dynegy, Inc.,* 344 F 3d 446 (5th Cir 2003) ............... 25

*Celotex Corp. v. Catrett,* 477 U.S. 317

106 S Ct 2548 (1986) ................................................................................. 18

*Chastain v. Cooper & Reed*, 250 S W.2d 652
(Tex. Civ App —Dallas 1952, no writ) ........................................ 34, 42

*In re Coastal Plains*, 179 F.3d 197 (5th Cir 1999) ............................... 28

*Compaq Computer Corp. v. Ergonome, Inc.*
210 F Supp 2d 845 (S D. Tex 2002) ................................................ 24

*Compaq Computer Corp. v. Ergonome, Inc.*
387 F 3d 403, 408 (5th Cir 2004) ................................................ 39

*Computer Associates Int'l, Inc. v. Qwest Software*, No 02-C-4721
2003 U S Dist LEXIS 12815 (N D Ill July 23, 2003) ................. 21, 28

*Continental Casualty Co. v. Dr. Pepper Bottling Co. of Texas, Inc.*
Civil Action No. 3:03-CV-1207-BH,
2005 U S Dist LEXIS 2788 (N D. Tex February 23, 2005) .................... 27

*Croce v. Bromley Corp.*, 623 F.2d 1084 (5th Cir. 1980) ..................... 30-31

*Daboub v. Gibbons*, 42 F 3d 285 (5th Cir. 1995) ............................. 19, 27

*Dorsey v. Money Back Music, Inc.*, 304 F. Supp. 2d 858 (E.D. La. 2003) ........... 19

*Effects Assocs. v. Cohen*, 908 F.2d 555 (9th Cir. 1990) ........................ 33

*FDIC v. Wallace*, 975 F.2d 227 (5th Cir. 1992) ............................. 35, 42

*Haddock v. Mentor Texas, L.P.*, No 3:03-CV-2311-B
2005 U S. Dist 4975 (N D Tex March 25, 2005) ............................. 18

*Hallman v. Safeway Stores, Inc.*, 368 F 2d 400 (5th Cir. 1966) .................. 37

*HECI Exploration Co., v. Neel*, 982 S W.2d 881 (Tex. 1998) ....................... 30

*Hotaling v. Maher*, 118 F 3d 199 (4th Cir 1997) .............................. 26-27

*Hotsamba v. Caterpillar, Inc.*, No. 01-C-5540,
2004 U S Dist. LEXIS 4882 (N D. Ill. March 25, 2004) ........................ 20

*Houston Endowment, Inc. v. Atlantic Richfield Co.*,
972 S W.2d 156 (Tex. App.—Houston [1[st] Dist.] 1998, no writ) ............... 28

*Howard v. Fiesta Texas Show Park, Inc.*, 980 S.W.2d 716
    (Tex. App.—San Antonio 1998, pet. denied) ..................... 28

*Hubacek v. Ennis State Bank*, 317 S.W.2d 30 (1958) ....................................... 35, 42

*Hucksold v. HSSL, L.L.C.*, 344 F. Supp. 2d 1203 (E.D. Mo. 2004) ............... 19-20, 22

*Huddleston v. Nelson Bunker Hunt Trust Estate*
    102 B.R. 71 (N.D. Tex. 1989) ......................................................... 3

*Hunton v. Guardian Life Ins. Co. of America*
    231 F. Supp. 2d 686 (S.D. Tex. 2001) ......................................... 28, 29

*I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996) .................................... 33

*Jones v. Kelley*, 614 S.W.2d 95 (Tex. 1981) ............................................. 49

*Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260 (5th Cir. 1978) ..................... 3

*Lilly v. Tolar*, No. 06-01-00163-CV, 2002 Tex. App. LEXIS 6092
    (Tex. App.—Texarkana August 22, 2002, no pet.) ....................... 49

*Lipscher v. LRP Productions, Inc.*, 266 F.3d 1305 (11th Cir. 2001) ............... 20

*Lowry's Reports, Inc. v. Legg Mason, Inc.*
    271 F. Supp. 2d 737 (D. Md. 2003) ............................................. 22

*Lulirama Ltd., Inc. v. Axcess Broadcast Services, Inc.*
    128 F.3d 872 (5th Cir. 1997) ...................................................... 33

*MGIC Indem. Corp. v. Weisman*, 803 F.2d 500 (9th Cir. 1986) ..................... 3

*Miles v. Burris*, 54 F.3d 284 (7th Cir. 1995) ........................................... 30

*Mobil Producing Texas & N.M. v. Cantor*
    93 S.W.3d 916 (Tex. App.—Corpus Christi 2002, no pet.) ............. 30

*National Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*
    991 F.2d 426 (8th Cir. 1993), *cert. denied*, 510 U.S. 861 (1993) ........ 20

*National Utility Service, Inc. v. Xanser Corp.*, No. 3:03-CV-0878-P
    2003 U.S. Dist. LEXIS 21758 (N.D. Tex. December 1, 2003) ......... 27

*Phillips v. Holladay Property Services, Inc.*, 937 F. Supp. 32 (D.C. Cir. 1996) ...... 30

*Prather v. Neva Paperbacks, Inc.*, 410 F.2d 698 (5th Cir. 1969) ........................ 37

*Prieto v. John Hancock Mut'l Life Ins. Co.*,
    132 F Supp 2d 506 (N.D. Tex. 2001) ........................................ 28

*ProCD, Inc. v. Zeidenberg*, 86 F 3d 1447 (7th Cir 1996) ...................... 19

*Republic Nat'l Bank of New York v. Luis Winston, Inc.*,
    107 A.D 2d 581 (N Y App Div. 1st Dep't 1985) ............................ 30-31

*Robinson v. Texas Auto Dealers Association*
    No. 5:97-CV-273, 2003 U.S Dist LEXIS 10598 (E D Tex March 27, 2003) .... 30

*Roley v. New World Pictures, Ltd.*, 19 F.3d 479 (9th Cir 1994) ....................... 26-27

*S.V. v. R.V.*, 933 S.W.2d 1 (Tex. 1997) ................................................ 28

*San Pedro v. U.S.*, 79 F 3d 1065 (11th Cir. 1996) .................................. 18

*Schuchart & Associates, Professional Engineers, Inc. v. Solo Serve Corp.*
    540 F Supp 928 (W D. Tex. 1982) ........................................ 22-23

*Sharp v. Patterson*, No. 03 Civ 8772 (GEL)
    2004 U.S. Dist. LEXIS 22311 (S D N Y November 3, 2004) ................ 19

*Southern Poultry Processing, Inc. v. Dewitt Farms*,
    639 S W 2d 702 (Tex. App.—Tyler 1982, writ ref'd n r.e) ............... 34, 42

*State Fidelity Mortg. Co. v. Varner*, 740 S.W.2d 477
    (Tex. App.—Houston [1st Dist ] 1987, writ denied) .................... 37, 41

*Stine v. Stewart*, 80 S.W.3d 586 (Tex. 2002) ...................................... 27

*Stuckey v. White*, 647 S.W.2d 35
    (Tex. App.—Houston [1st Dist ] 1982, no writ) ........................ 48

*Taquino v. Teledyne Monarch Rubber*,
    893 F 2d 1488 (5th Cir 1990) ....................................... 20

*Taylor v. The Stanley Works*, No 4:01-CV-120,
    2002 U.S Dist LEXIS 26892 (E D. Tenn. July 16, 2002) ................ 30

*The Long Trusts v. Griffin*, 144 S W 3d 99
    (Tex. App.—Texarkana 2004, pet. filed Nov 2004) .................... 48-49

*Thomas v. Esquivel*, 959 F Supp 396 (N.D. Tex. 1997)..................................................3

*Thomas v. Stone Container Corp.*, 922 F. Supp 950 (S.D. N.Y 1996) ............................30

*UICI v. Gray*, 2002 U.S. Dist. LEXIS 3542
    (N.D. Tex. March 1, 2002) ........................................................................................37

*Van Woudenberg v. Gibson*
    211 F.3d 560 (10th Cir. 2000) ..................................................................................3

*Veeck v. Southern Bldg. Code Congree Int'l, Inc.*
    241 F.3d 398 (5th Cir 2001) ....................................................................................26

*Walker v. Blackwell*, 360 F.2d 66 (5th Cir 1966)......................................................3

*Werlin v. Reader's Digest Asso.*,
    528 F. Supp. 451 (S.D N Y 1981) ...........................................................................23

*Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446
    (6th Cir. 2001) *cert. denied* 534 U.S. 1114 (2002).................................................20

## STATUTES

FRCP 56(c)..............................................................................................................18

FRCP 56(g) ..............................................................................................................7

17 U.S.C. § 106 .......................................................................................................19

17 U.S.C. § 107 .......................................................................................................39

17 U S C § 301(b)....................................................................................................19

17 U S C § 507(b).....................................................................................................26

NORTHERN DISTRICT CIVIL LOCAL RULE 7 2(e) ............................................................7

NORTHERN DISTRICT CIVIL LOCAL RULE 56 3(a)(3) ......................................................7

TEX. CIV. PRAC. & REM CODE § 16 004 and § 16.091 ............................................27, 29

TEX CIV PRAC. & REM CODE § 38 001 ......................................................................49

FED R EVID. 801 .....................................................................................................7

## OTHER

1 McDonald, Texas Civil Practice (1965 Rev  Vol ) (2002) .................................................. 37

E  Farnsworth, Contracts (3d Ed. 1999) § 11.3 ...................................... .... . .  . .. ......  41

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RECURSION SOFTWARE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:03-CV-2711-B-BH |
| | § | ECF |
| INTERACTIVE INTELLIGENCE, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Recursion Software, Inc. ("Plaintiff") files[1] *Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment* requesting the Court to deny the relief sought by Defendant Interactive Intelligence, Inc. ("Defendant") in *Defendant Interactive Intelligence, Inc.'s Motion for Summary Judgment* filed on April 4, 2005.

## I. INTRODUCTION

1.      <u>Summary of Plaintiff's Claims</u>.  Plaintiff asserts claims against Defendant for breach of contract (software License Agreement), copyright violation, unjust enrichment and *quantum meruit* arising from Defendant's unauthorized use of Plaintiff's *Voyager* software. Voyager is a software program, originally developed by Objectspace, Inc. ("Objectspace") and

---

[1]  On April 25, 2005, Plaintiff filed a combined Response and Brief in *Plaintiff's Response and Memorandum in Opposition to Defendant's Motion for Summary Judgment* that exceeded the page limit of fifty pages by eight (8) pages (after subtraction of the cover sheet, table of contents, index of authorities and signature pages) – the total Response was 68 pages. The combined Response/Brief was filed via hand delivery, rather than electronically, because the Court's electronic filing system was not operational on April 25, 2005. *See* Exhibit "A." A day following receipt of the Court's *Order Denying Plaintiff's Motion for Leave Regarding Page Limitations Pursuant to Local Rule 7.2*, Plaintiff has modified its Response/Brief to separate the Memorandum from the Response and shorten the Memorandum to comply with the Local Rule 56.4(c) and the page limitations of Local Rule 56.5(b).

sold and assigned to Plaintiff in December, 2001. Voyager provides a framework for the

development of distributed Java applications. Defendant incorporated Voyager in its own

software application, which Defendant markets and sell as *Interaction Recorder*. Voyager acts as

a vital communication tool between components within Interaction Recorder – that is, it permits

a user to communicate and access the Interaction Recorder server and to use the information

stored and created by Interaction Recorder.

    2.      <u>Plaintiff's Motion for Summary Judgment</u>.  On April 4, 2005, Plaintiff filed

*Plaintiff's Motion for Summary Judgment and Brief in Support Thereof* seeking judgment on

Plaintiff's breach of contract claims. Plaintiff also moved for judgment on Defendant's

counterclaims for fraudulent inducement and breach of implied warranty.

    3.      <u>Defendant's Motion for Summary Judgment</u>.  On April 4, 2005, Defendant filed a

*Motion for Summary Judgment* and *Memorandum in Support of Motion for Summary Judgment*.

Defendant grossly misrepresents the facts in its Motion. Even so, Defendant's Motion fails to

establish any claim as a matter of law.

## II. PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE

    4.      Pursuant to FED. R. CIV. P. 56(c), Plaintiff includes the following summary

judgment evidence in the *Appendix* (Docket Nos. 100 and 101) filed contemporaneously with

*Plaintiff's Motion for Summary Judgment* as set out below, along with the *Supplemental*

*Appendix* filed on April 25, 2005 (Docket No. 94). Plaintiff incorporates the summary judgment

evidence by reference, the same as if set forth fully herein:[2]

---

[2] Pursuant to FED. R. EVID. 201, Plaintiff requests that the Court take judicial notice of its file in
this action, specifically including:

## A. *APPENDIX* FILED IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**Exhibit "A": Affidavit of Paul Lipari.** Appendix Exhibit "A" is the *Affidavit of Paul Lipari*, President of Plaintiff and former CFO of Objectspace.

> **Exhibit "A-1":** **Asset Purchase Agreement.** Appendix Exhibit "A-1" is the *Asset Purchase Agreement* along with the Assignment Agreement; Assignment Agreement – Intellectual Property and Bill of Sale whereby Plaintiff obtained all rights to Voyager (including assignment of claims for violation of Voyager).

> **Exhibit "A-2":** **E-mail Correspondence.** Appendix Exhibit "A-2" is business record of Plaintiff - a copy of e-mail correspondence received from Defendant.

> **Exhibit "A-3":** **License Agreements.** Appendix Exhibit "A-3" is a true and correct copy of the License Agreements for Voyager versions .0.1, 2.0, and 2.0.1.

**Exhibit "B": Affidavit of John Patoskie.** Appendix Exhibit "B" is the *Affidavit of John Patoskie*, Vice-President of Engineering and Operations for Plaintiff.

---

(1) *Plaintiff's Motion for Summary Judgment and Brief in Support Thereof*;
(2) *Appendix* filed in support of *Plaintiff's Motion for Summary Judgment*;
(3) *Plaintiff's Response to Defendant's Motion to Dismiss and Brief in Support Thereof*;
(4) *Plaintiff's Motion to Strike the Statement of Scott Ganyo*;
(5) *Plaintiff's Objections to the Statement of Scott Ganyo*;
(6) *Plaintiff's Objections to the Statement of John Sheley*;
(7) *Plaintiff's Objections to the Declaration of Jeff Schwartz*;
(8) *Plaintiff's Objections to the Declaration of Anne Assante*;
(9) *Plaintiff's Objections to Statement of Jon Shapiro*;
(10) *Plaintiff's Objections to the Declaration of Michael A. Parker*; and
(11) *Plaintiff's Objections to Declaration of Chris Tarr*.

*See Kinnett Dairies, Inc v. Farrow*, 580 F.2d 1260, 1277 (5th Cir. 1978) ("Courts are particularly apt to take notice of material in court files.") (citing WEINSTEIN & BERGER, WEINSTEIN'S EVIDENCE 48 (Supp. 1977)); *Walker v. Blackwell*, 360 F.2d 66, 71 (5th Cir. 1966) (Coleman, J., dissenting) ("It is elemental that we are entitled to take judicial notice of our own records and files."); *Huddleston v. Nelson Bunker Hunt Trust Estate*, 102 B.R. 71, 73 (N.D. Tex. 1989) (noting that district court may judicially notice its own files and records) (citing *Aloe Crème Laboratories, Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970)); *Thomas v. Esquivel*, 959 F. Supp. 396, 398 (N.D. Tex. 1997) (Fish, J.) (stating that the court can take judicial notice of its own records; *accord, Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) ("[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) ("In considering a motion to dismiss, the court may take judicial notice of matters of public record outside the pleadings, including its own files from other cases.").

---

**Exhibit "B-1":**  **License Agreements.**  Appendix Exhibit "B-1" is a true and correct copy of the License Agreements for Voyager versions 1 0.1, 2.0, and 2.0.1.

**Exhibit "B-2":**  **Download Page.**  Appendix Exhibit "B-2" is a true and correct copy of the download page from Objectspace's (and later Recursion's) website to download Voyager.

**Exhibit "B-3":**  **Initial Set-up Page.**  Appendix Exhibit "B-3" is a true and correct copy of the initial set-up page from Voyager requiring acceptance of License Agreement before Voyager will install.

**Exhibit "B-4":**  **Grandfather Clause.**  Appendix Exhibit "B-4" is a true and correct copy of documents explaining the alleged grandfather exception.

**Exhibit "B-5":**  **E-mail Correspondence.**  Appendix Exhibit "B-5" is business record of Plaintiff - a copy of e-mail correspondence received from Defendant.

**Exhibit "C":**  **Affidavit of Timothy Milovich.**  Appendix Exhibit "C" is the *Affidavit of Timothy Milovich*, the former Vice President of Marketing and Sales for Objectspace, Inc.

**Exhibit "C-1":**  **License Agreement.**  Appendix Exhibit "C-1" is a true and correct copy of the License Agreement for Voyager version 1.0.1.

**Exhibit "C-2":**  **License Agreement.**  Appendix Exhibit "C-2" is a true and correct copy of the License Agreement for Voyager version 2.0.1.

**Exhibit "C-3":**  **Grandfather Exception.**  Appendix Exhibit "C-3" is a true and correct copy of the explanation of the alleged grandfather clause.

**Exhibit "B-4":**  **Grandfather Acknowledgement.**  Appendix Exhibit "B-4" is a true and correct copy of the acknowledgement form for the alleged grandfather clause.

**Exhibit "D":**  **Defendant's Second Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories.**

**Exhibit "E":**  **Deposition of Scott Ganyo.**  Appendix Exhibit "E" is Vol. I and II of the condensed transcript of the Deposition of Scott Ganyo, including true and correct copies of Deposition Exhibits.

**Exhibit "F":**  **Deposition of Defendant – John Sheley.**  Appendix Exhibit "F" is the condensed transcript of the Deposition of Defendant – Corporate Representative John Sheley, including true and correct copies of Deposition Exhibits.

**Exhibit "G":**  **Deposition of Defendant – Tyler Baldwin.**  Appendix Exhibit "G" is the condensed transcript of the Deposition of Defendant – Corporate Representative Tyler Baldwin, including true and correct copies of Deposition Exhibits.

**Exhibit "H":**  **Deposition of Alliance Systems, Inc. – John Shapiro.**  Appendix Exhibit "H" is the condensed transcript of the Deposition of Alliance Systems, Inc.– Corporate Representative John Shaprio, including true and correct copies of Deposition Exhibits.

**Exhibit "I":**  **Deposition of Graham Glass.**  Appendix Exhibit "I" is the condensed transcript of the Deposition of Graham Glass, co-founder, part owner and former officer of Objectspace, Inc., including true and correct copies of Deposition Exhibits.

### B. *SUPPLEMENTAL APPENDIX* FILED IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**Exhibit "J":**  **Declaration of John Patoskie.**  Supplemental Appendix Exhibit "J" is the *Declaration of John Patoskie.*

   **Exhibit "J-1":**  **Curriculum Vitae.**  Appendix Exhibit "J-1" is a true and correct copy of the Curriculum Vitae for John Patoskie.

**Exhibit "K":**  **Declaration of Thomas Wheeler.**  Supplemental Appendix Exhibit "K" is the *Declaration of Thomas Wheeler*, a Senior Software Engineer for Recursion Software, Inc.

   **Exhibit "K-1":**  **Resume.**  Supplemental Appendix Exhibit "J-1" is a true and correct copy of the Resume for Thomas Wheeler.

**Exhibit "L":** **Affidavit of Robert J. Johnston.** Supplemental Appendix Exhibit "L" is the *Affidavit of Robert J. Johnston*, including the attached demand letter from Plaintiff to Defendant dated July 20, 2003.

**Exhibit "M":** **Deposition of Scott Ganyo.** Supplemental Appendix Exhibit "M" are true and correct copies from the Deposition of Scott Ganyo (Vol. I and II), Exhibits 2, 8-13, and Defendant's Exhibits 2-5.

## III. SCOTT GANYO'S BAD FAITH STATEMENT UNDER OATH

5.      In support of its Summary Judgment Motion, Defendant relies heavily on the

*Statement of Scott Ganyo* (the "Bad Faith Ganyo Statement") dated March 25, 2005.[3] On March

10 and 11, 2005, Defendant presented Ganyo for deposition as a corporate representative. At the

deposition, Ganyo distanced himself from his first two Statements dated November 22, 2003 and

October 4, 2004 provided under oath and subject to the penalties of perjury.

6.      Thereafter, Defendant had Ganyo sign a *third* Statement (Defendant's Appendix

pp. 4-9) also under oath and subject to the penalties of perjury – the Bad Faith Ganyo Statement.

Despite the numerous contradictions and qualifications[4] regarding Ganyo's testimony identified

in *Plaintiff's Motion to Strike Statement of Scott Ganyo*,[5] Defendant not only "stands" on

Ganyo's testimony, but seeks summary judgment relying on the testimony.

---

[3] This is actually the *third* Statement of Scott Ganyo in this case. Interestingly, Mr. Ganyo's testimony morphs to Defendants needs as additional facts are revealed. *See* PL. SUPP. APP. 524-545; 562-587; 588-615; 616-620.

[4] For example, Ganyo admits that he did not write the statement and that the statement is misleading without a time line.

[5] As admitted by Ganyo, the failure to accurately present a time line for Ganyo's "testimony" makes it misleading. Nevertheless, Defendant attempts to cloud the facts by relying on documents and statements that are inapplicable to the version of Voyager used by Defendant (Version 2.0.1vwhich was not released and obtained until December 23, 1998). *See* Def. App. at p.28 and 29. For example, Defendant now admits that version 2.0.1 is the only version of Voyager incorporated into Interaction Recorder by Defendant. *See* PL. APP. 199-200, 202-03. Ganyo admits that he did not evaluate Voyager

7.     Because Defendant had to know of the inconsistencies and misleading statements in Ganyo's first two statements prior to obtaining the Bad Faith Ganyo Sttatement, Plaintiff asks the Court to determine whether the Bad Faith Ganyo Statement was made/filed in bad faith. Pursuant to FED. R. CIV. P. 56(g), Plaintiff seeks an order striking the bad faith affidavit as well as award of reasonable expenses, including attorney's fees incurred by Plaintiff as a result of Defendant's filing and reliance upon the Bad Faith Ganyo Statement.[6]

### IV. DEFENDANT'S ADDITIONAL FALSE AND MISLEADING STATEMENTS

8.     Defendant's liberties with the facts do not end with the Bad Faith Ganyo Statement. Defendant embellishes the "facts" in its Memorandum in Support of Motion for Summary Judgment. Most of these "facts" fail to include record cites and cannot be considered by the Court.[7] Therefore, Plaintiff will focus the Court on the most egregious portions.

9.     The alleged fraudulent transfer. Defendant attempts to use the pleading of a non-party from an unrelated case as summary judgment proof.[8] Regardless, the other case (which concluded by settlement) has no bearing on any of Defendant's defenses or Plaintiff's claims.

---

for Interaction Recorder. See PL. APP. 148, 153 and 157. Ganyo also admits that he obtained Voyager while working for a previous employer. See PL. APP. 157, 141; PL. SUPP. APP. 519 (Ganyo Deposition Exhibit 2). In fact, Ganyo was acknowledged as a beta tester of the software on a personal basis (prior to working for Defendant). See PL. APP. 144. Further, Ganyo couldn't even testify whether he was the software developer who first incorporated Voyager into Interaction Recorder. See PL. APP. 153 and 157. All of this time specific information is paramount because Defendant attempts to rely on inadmissible parol evidence, inapplicable license agreement terms, outdated press releases and communications that have no bearing on the express terms of the Voyager 2.0.1 License Agreement.

[6] See Plaintiff's Motion to Strike Statement of Scott Ganyo.

[7] See NORTHERN DISTRICT CIVIL LOCAL RULE 56.3(a)(3) and 7.2(e) requires citations to the Appendix for each assertion that the party makes concerning the summary judgment evidence.

[8] These statements are hearsay and should be ignored. See FED. R. EVID. 801.

10.   <u>Objectspace's Big Idea</u>.  By selectively choosing Objectspace's "intentions" with Voyager, Defendant leaves out Objectspace's intent to charge license fees for the inclusion of Voyager in applications packaged with hardware (such as with Defendant's Interaction Recorder).  This intention is reflected by testimony from Objectspace's co-founder, Graham Glass, and testimony from Objectspace's Vice-President of Sales and Marketing, Tim Milovich, as well as the terms of all the Voyager license agreements.[9]

11.   <u>Objectspace's Strategy - Free Software</u>.  Defendant omits the fact that all of the Voyager License Agreements provide restrictions on the use and distribution of Voyager. Voyager has never been free for all uses.[10]

12.   <u>Objectspace Asks Interactive for Help</u>.  There is no evidence in the record whatsoever that Objectspace asked Defendant assistance.  The summary judgment record reflects that Ganyo, *prior to the time he worked for Defendant*, acted as a beta tester for Voyager.[11] Ganyo acted as a beta-tester on a personal basis - not for any entity, and certainly not for Defendant.[12]

13.   <u>Objectspace Releases First Version of Voyager for Free</u>.  Defendant's selection of portions of the evidence is again misleading.  A full reading of the documents indicates that each document includes (1) a website listing – where the license agreement terms may be obtained; (2)

---

[9]  *See* PL. APP. 106-107 (Exhibit "C" at ¶¶ 4-7); PL. APP. 109-114; PL. APP. 470-72 and 477-78 (Exhibit "I" at p. 61, line 14 through p. 63, line 11; p. 66, line 3 through p. 69, line 10); PL. APP. 496.

[10]  *See* PL. APP. 2 (Exhibit "A" at ¶ 5); and PL. APP. 86-87 (Exhibit "A-3"); PL. APP. 89-90 (Exhibit "B" at ¶ 3); and PL. APP. 97-98 (Exhibit "B-1"); PL. APP. 106-107 (Exhibit "C" at ¶¶ 3-5); and PL. APP. 113-114 (Exhibits "C-1" and "C-2").

[11]  *See* PL. SUPP. APP. 518-19.

[12]  *See* PL. APP. (Exhibit "E" at p. 44, lines 12-20).

indicates that Voyager is free for most (not all) commercial uses, or (3) specifically refers the user to review the license agreement for the terms and restrictions.[13]

14.   <u>Interactive Selects the Free Voyager</u>.  The only possible accurate statement here is that **"Defendant downloaded and accepted the terms of each Voyager License Agreement."**[14]

15.   <u>Objectspace consents to Interactive using Voyager</u>.  This statement is unsupported in the summary judgment record, which actually establishes the contrary.  Defendant's own corporate representative testified that Objectspace never knew of Defendant's use of Voyager in any application.[15]

16.   <u>Interactive Releases Interaction Recorder</u>.  Defendant attempts to downplay Voyager's use in Interaction Recorder, but Defendant's corporate representatives testified that Voyager is a "vital" component, without which, Interaction Recorder's performance would be "seriously degraded."[16]

---

[13]  *See e.g.*, Def's App. at pp. 6 (¶ 14), 15, 16, 18, 28, 33, 37, 50, 53, 54, 55, 57, 78, 79, 81, 82.

[14]  *See* PL. APP. 90 (Exhibit "B" at ¶ 4-5) and PL. APP. 99-100 (Exhibits "B-2" and "B-3"); *see also*, PL. APP. 145 (Exhibit "E" at p. 46, lines 2-6); PL. APP. 162-63 (Exhibit "E" at p. 28, line 14 through p. 29, line 6); PL. APP. 202 (Exhibit "F" at p. 28, lines 10-14); and PL. APP. 219, 220-223 (Deposition Exhibits 22 and 23); PL. APP. 150-51 (Exhibit "F" at p. 68, line 2 through p. 69, line 15); and PL. APP. 194 and 195 (Deposition Exhibits 9 and 10).

[15]  *See* PL. APP. 158 (Exhibit "E" at p. 11, line 2 through line 17); PL. APP. 166 (Exhibit "E" at p. 43, line 21 through p. 44, line 7); PL. APP. 159 (Exhibit "E" at p. 13, line 24 through p. 14, line 25; p. 15, lines 15-18; p. 16, lines 12-15; and PL. APP. 163 (Exhibit "E" at p. 31, lines 20-24).

[16]  *See* PL. APP. 147 (Exhibit "E" at p. 55, lines 9-25); PL. APP. 203 (Exhibit "F" at p. 32, lines 2-15).

---

## V. SPECIFIC DENIAL OF DEFENDANT'S ALLEGED "UNDISPUTED FACTS"

17.    In addition to the liberties taken in Defendant's "Facts" on pages 1-9 of its

Summary Judgment motion, Defendant lists thirteen "undisputed facts" of which only one (1) is

undisputed:

| DEFENDANT'S "UNDISPUTED" FACTS | THE EVIDENCE | RECORD CITE |
|---|---|---|
| 1. Objectspace informed Interactive verbally and in writing that Voyager was "free for commercial use." | The communication relied upon by Defendant is dated January 16, 1998 – before Voyager 2.0.1 (the version incorporated by Defendant in Interaction Recorder) was released on December 23, 1998 – and has nothing to do with licensing issues. | Def's App. at p. 30; (See Def's App. at p. 28-29 for Defendant's download of Voyager 2.0.1). |
| | The communication relied upon by Defendant is inadmissible parol evidence contained in the signature line of the writer.  The terms of the License Agreement for version 2.0.1 control. The License Agreement specifies that Voyager is free -- so long as certain restrictions are not violated. | PL. APP. 86-87; 97-98. |
| | Communication regarding licensing issues is consistent in that it specifies that Voyager is "free for most commercial uses" not all commercial uses and refers the reader to the license agreement for the terms. | Def's App. at p. 33. |
| 2. Objectspace told Interactive that it could include Voyager in Interactive's products that it sold. | Defendant relies on the Bad Faith Ganyo Statement.  Ganyo allegedly had two communications with Objectspace employees:<br><br>The Graham Glass conversation where Ganyo cannot confirm whether he | PL. APP. 158 (Exhibit "E" at p. 11, line 2 through line 17); |

| | worked for Defendant at the time of the convention. [Even by Ganyo's "new" testimony in the Statement, the conversation predated the release of Voyager 2.0.1 on December 23, 1998.] | PL. APP. 166 (Exhibit "E" at p. 43, line 21 through p. 44, line 7). |
|---|---|---|
| | The telephone conversation with the "unidentified" female where Ganyo admits that he doesn't know if he was working on Interaction Recorder yet, and where was no discussion of Ganyo using Voyager in any application, and no discussion of Ganyo using Voyager in Interaction Recorder. | PL. APP. 159 (Exhibit "E" at p. 13, line 24 through p. 14, line 25; p. 15, lines 15-18; p. 16, lines 12-15; and PL. APP. 163 (Exhibit "E" at p. 31, lines 20-24). |
| 3. Interaction Recorder has 69,602 lines of software code, and only 26 of these lines (0.04%) reference Voyager. Voyager has 1,697 software functions, but Interaction Recorder references only 11 of those functions (0.6%). Thus, only (0.024% (twenty four thousandths of one percent) [sic] of the total functionality of Interaction Recorder comes from Voyager. Voyager only plays a miniscule part in the Interactive's Interaction Recorder software. | Ganyo testified that if Voyager was removed from Interaction Recorder, the server would continue to function and operate, however the usefulness would be "seriously degraded" by not being able to access the server. | PL. APP. 147 (Exhibit "E" at p. 55, lines 9-25). |
| | Defendant also testified that it took one year to remove Voyager from Interaction Recorder because of the difficulty in replacing Voyager. | PL. APP. 203 (Exhibit "F" at p. 29, line 12 through p. 32, line 1). |
| | Defendant agreed that Voyager provides a "vital" part of the ability of Interaction Recorder to provide its services to the client. | PL. APP. 203 (Exhibit "F" at p. 32, lines 2-15). |
| | The number of lines of software code that reference Voyager have no bearing whatsoever on the role Voyager plays in Interaction Recorder. A single reference to a single line of code (i.e. a single Voyager function) can be the most important part of that application if the capability referenced in the code is not available anywhere else and is necessary for the functioning of the application – as in the case with Voyager's use in Interaction Recorder. Without Voyager, | PL. SUPP. APP. 500. |

| | | |
|---|---|---|
| | the server functions for Interaction Recorder are unavailable to the Interaction Recorder user.  The ability of Interaction Recorder's users to communicate with the server (and therefore use any of the capabilities of the application) required Voyager. | |
| | Additionally, when the correct function of an application depends on its ability to communicate with another application (as is the case with Voyager's function in Interactive Recorder), the communication can take place with only 1 or 2 function calls into Voyager; but without which no communication can take place at all.  The subtraction of Voyager would make the entire application inoperable to the user. | PL. SUPP. APP. 500. |
| | A single Voyager function used by the customer's application will itself reference a large number of other Voyager functions "behind the scenes", in much the same way that the turning of a small automobile ignition key causes the entire engine to turn over and set into motion the vehicle's other functions and equipment.   The net result is that by including only a few calls to Voyager functions, the customer's application is effectively including thousands of lines of Voyager code.  This is the power of Voyager software and one of the reasons software engineers may prefer the use of Voyager instead of other object request broker software. By using Voyager, software engineers do not have to implement a significant amount of code (or include a significant amount of Voyager's functions) to gain a significant amount of functionality. | PL. SUPP. APP. 500. |
| | Plaintiff also refers the Court to the Declaration of Thomas T. Wheeler that | PL. SUPP. APP. 504-511. |

| | details all of Interaction Recorder's uses of Voyager, including functionality not available in other ORB software and functionality utilized by Interaction Recorder that include the use of five (5) of Voyager's (15) fifteen patents. | |
|---|---|---|
| 4.  Interactive relied on Objectspace's statements that Voyager was free for commercial use and that it could use Voyager in its software products that it sold without having to pay Objectspace anything. | Defendant cites to Statements of Scott Ganyo, John Sheley and Paul Jenkins. However, Sheley and Jenkins did not determine that Voyager could/should be used in Interactive Recorder.  Defendant admits that Ganyo was the person who made the decision to use Voyager.<br><br>Plaintiff has established that Ganyo did not have any reasonable basis for relying on inapplicable license agreement terms, inapplicable hearsay and parol evidence – rather than the express terms of the applicable License Agreement.<br><br>John Sheley admits that he has no personal knowledge regarding Interaction Recorder prior to April, 1999.<br><br>Jeff Schwartz does not demonstrate any personal knowledge.  He did not work on Interaction Recorder, nor was he involved in the decision to use Voyager in Interaction Recorder.  Additionally, all documents attached to his statement are irrelevant to Defendant's inclusion of Voyager 2.0.1 in Interaction Recorder. | Defs. App. at p. 4-8.<br><br><br><br><br><br>PL. APP. 167 (Exhibit "E" at p. 48, lines 12-23).<br><br><br><br><br><br>PL. APP. 198 (Exhibit "F" at p. 9, lines 6-25).<br><br><br>Def's App. at p. 43-44. |
| 5.  Objectspace knew that Interactive used Voyager in an Interactive software product. | Defendant relies on the bad faith Statement of Ganyo (the third revision).  When deposed, Ganyo admits that Objectspace did NOT know of Defendant's use of Voyager in Interaction Recorder.  The alleged communications did not even discuss any use of Voyager in any application, much | PL. APP. 159 and 163 (Exhibit "E" at p. 15, lines 15-18; and p. 29, line 25 through p. 30, line 21). |

| | | |
|---|---|---|
| | less incorporation of Voyager in Interaction Recorder. | |
| 6. Objectspace never objected to Interactive's use of Voyager in the Interactive software product. | Again, this relies on the misleading Statement of Ganyo. Unlike the statement, Ganyo admits at his deposition that Objectspace would not have known how Defendant used Voyager and that if Objectspace didn't know, they would not have taken any action against Defendant. | PL. APP. 163 (Exhibit "E" at p. 29, line 25 through p. 30, line 21). |
| 7. Objectspace did not assign to Recursion any causes of action for breach of license agreements or copyright infringement. | Plaintiff obtained all rights to Voyager through an Asset and Purchase Agreement with Objectspace, Inc. dated December 20, 2001, including all rights and interest to Voyager. Such interest includes the assignment of all Voyager License Agreements; and the right to assert claims on behalf of Objectspace or Plaintiff for past copyright infringement. | PL. APP. 1-2 [Exhibit "A" (*Affidavit of Paul Lipari*) at ¶ 3]; and PL. APP. 6-81 [*Asset Purchase Agreement* attached thereto as Exhibit "A-1" (including all attachments thereto)]; Specifically, see: PL. APP. 12 [Exhibit "A-1" (Asset Purchase Agreement] – assigns intangible assets including Voyager license agreements and copyrights – including past claims; PL. APP. 66 [Bill of Sale at Assignment Agreement at ¶ 2]; PL. APP. 68 [Assignment Agreement – Intellectual Property at ¶ 1] (including transfer of Voyager patents, trademarks and copyrights); and PL. APP. 79 [Assignment Agreement] (including transfer of Voyager copyrights and rights to sue for past infringement). |
| 8. Interactive's resellers are not "in the control or service of" | Defendant admits that approximately seventy percent (70%) of its sales are through partners, distributors, resellers | PL. APP. 239 (Exhibit "G" at p. 22, line 14-19). |

| | | |
|---|---|---|
| Interactive. | and value added resellers (collectively "resellers"[17]). | |
| | Defendant uses these resellers to provide Defendant with sales, distribution and marketing services.  In consideration of these services, the resellers receive Defendant's products at a discount, thus making money when reselling Defendant's products to the end user. | PL. APP. 378 [Exhibit "H" at p. 49, lines 1-3]; *see also*, PL. APP. 242, 246, and 236 (Exhibit "G" at p. 35, lines 7-10; p. 49, lines 5-20; p. 11, lines 6-23); PL. APP. 376 (Exhibit "H" at p. 42, lines 2-21). |
| | Besides the sales, distribution and marketing services that are provided by resellers, Defendant's contracts with its resellers provide Defendant with extensive control over the activities permitted by its resellers, requiring (i) sales quotas, (ii) personnel trained and certified by Defendant, (iii) business plans, (iv) proper packaging – including Defendant's license agreements, (v) execution of Defendant's license agreements, and (vi) a right to inspect records and invoices.[18] | *See* PL. APP. 245-47 [Exhibit "G" at p. 48, l. 14 through p. 54, l. 9]; and PL. APP. 298-312 [Deposition Exhibit 8]; PL. APP. 248-251 [Exhibit "G" p. 60, l. 21 through p. 69, l. 14]; and PL. APP. 333-352 [Deposition Exhibit 13]; PL. APP. 251-52 [Exhibit "G" p. 72, l. 24 through p. 73, l. 20]; and PL. APP. 353-63 [Deposition Exhibit 16]. |
| | Defendant also refers to its resellers at its "authorized representatives." | *See* PL. APP. 250-51 (Exhibit "G" at p. 68, line 18 through p. 69, line 14); and PL. APP. 345 (Deposition Exhibit 16); PL. APP. 253 (Exhibit "G" at p. 79, line 22 through p. 80, line 23); and PL. APP. 364 (Deposition Exhibit 17). |

---

[17]  *See* PL. APP. 249 (Exhibit "G" at p. 62, lines 12-22).

[18]  *See* PL. APP. 245-47 (Exhibit "G" at p. 48, line 14 through p. 54, line 9); and PL. APP. 298-312 (Deposition Exhibit 8); PL. APP. 248-251 (Exhibit "G" p. 60, line 21 through p. 69, line 14); and PL. APP. 333-352 (Deposition Exhibit 13); PL. APP. 251-52 (Exhibit "G" at p. 72, line 24 through p. 73, line 20); and PL. APP. 353-63 (Deposition Exhibit 16).

| | | |
|---|---|---|
| 9. Interactive does not ship or sell any hardware on which Interaction Recorder in [sic] installed. | Defendant markets its products to provide the customer a "whole product solution" – that is providing the customer with *hardware*, software and services. Defendant provides the whole product solution (the hardware and sometimes services portions) on *direct* sales by using partners or value added distributors to provide the hardware component. | PL. APP. 238, 239, and 248 (Exhibit "G" at p. 17, line 14 through p. 19, line 25; p. 22, line 23 through p. 23, line 12; p. 57, line 6 through p. 60, line 13); PL. APP. 324, 328, 332 (Deposition Exhibits 10, 11, and 12); PL. APP. 242-43 and 254-55 (Exhibit "G" at p. 35, line 16 through p. 38, line 7; p. 82, line 17 through p. 85, line 13). |
| | Defendant admits that it is aware and permits its resellers to sell its software, pre-packaged, copied, or installed with the hardware. Defendant even provides hardware services for its resellers and allows hardware companies to sell Defendant's products. | PL. APP. 239-241, 244, 245, and 249 (Exhibit "G" at p. 22, line 23 through p. 31, line 10; p. 38, line 10 through p. 40, line 13; p. 42, line 24 through p. 43, line 6; p. 47, line 25 through p. 48, line 7; p. 62, line 1 through p. 63, line 2; and p. 72, lines 11-21); PL. APP. 280-81, 282-87, and 288-297 (Deposition Exhibits 5, 6, 7, and 13); PL. APP. 372 (Exhibit "H" at p. 25, line 12 through p. 27, line 3); PL. APP. 241-42 (Exhibit "G" at p. 31, line 23 through p. 34, line 18); PL. APP. 277-79 (Deposition Exhibit 3); PL. APP. 247, 240-41, 243, 244, and 245 (Exhibit "G" at p. 54, line 14 through p. 55, line 14; p. 27, line 22 through p. 31, line 10; p. 39, lines 14-19; p. 42, line 24 through p. 43, line 6; p. 47, line 25 through p. 48, line 7); PL. APP. 298-312, 280, 282, 87, 288-297 (Deposition Exhibits 8, 5, 6, and 7). |

| | | |
|---|---|---|
| | One of Defendant's resellers, Alliance Systems, Inc., admits to selling Defendant's software copied and configured onto hardware sold simultaneously, including Interaction Recorder.<br><br>Moreover, Defendant relies on the Statement of John Sheley, a software developer – who fails to demonstrate how he has personal knowledge regarding the sale of Interaction Recorder. | PL. APP. 371-72 (Exhibit "H" at p. 24, line 10 through p. 27, line 3); and PL. APP. 386-459 (Deposition Exhibits 8 and 9). |
| 10.  Interactive has never packaged or embedded Interaction Recorder with hardware. | *See supra*—Plaintiff's response to alleged undisputed fact no. 9.<br><br>Defendant admits that its resellers may package Interaction Recorder with hardware and does not know whether Interaction Recorder is packaged with hardware by its resellers.  Defendant also admits it could not know how many times that persons in its control and service have packaged or embedded Interaction Recorder with hardware. | PL. APP. 240-41, 242-43, 251, and 260 (Exhibit "F" at p. 27, line 22 through p. 31, line 10; p. 35, line 16 through p. 38, line 7; p. 72, lines 11-22; and p. 107, line 20 through p. 108, line 9). |
| 11.  Recursion never demanded any money from Interactive. | On July 20, 2003, Plaintiff sent a demand letter to Defendant requiring the return of all products containing Voyager, or in the alternative, $1,500 per licensed CPU. | PL. SUPP. APP. 514-517. |
| 12.  Any end user of Voyager software could have "simply gone out and downloaded Objectspace's Voyager product. | This is true.  And such person would have to comply with the terms of the applicable License Agreement of the version of Voyager downloaded – something Defendant failed to do. | |

| 13. Recursion has suffered no damages. | Recursion incurred damages for which Defendant is liable. Recursion charges license fees to use of Voyager in a manner inconsistent with the click wrap License Agreements on a per unit basis (each processor or CPU) with costs of at least $1,500.00 per unit or as negotiated between Plaintiff and the licensee. In addition to the license fees, a mandatory maintenance and support fee for the first year of support would be paid by the licensee in the amount of the total license fees multiplied by eighteen percent (18%). | PL. APP. 3-4 (Exhibit "A" at ¶¶ 11 and 14). |

## VII. ARGUMENT & AUTHORITIES

### A. LEGAL STANDARD

18.    The Court is well familiar with the standard for summary judgment under FRCP

56(c); *See e.g., Haddock v. Mentor Texas, L.P.*, No. 3:03-CV-2311-B, 2005 U.S. Dist. 4975, at

*4-6 (N.D. Tex. March 25, 2005) (Boyle, J.).[19]

### B. COPYRIGHT PREEMPTION DOES NOT APPLY TO PLAINTIFF'S COMMON LAW CLAIMS[20]

19.    EQUIVALENT TEST. The test for determining whether copyright preemption

applies to state law claims is determined by whether the cause of action asserted protects rights

---

[19] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *San Pedro v. U.S.*, 79 F.3d 1065, 1068 (11th Cir. 1996); *Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970); *Celotex Corp v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986).

[20] On May 27, 2004, Defendant filed a Motion to Dismiss based on copyright preemption [Docket No. 24] and thereafter, included similar grounds in its Motion for Summary Judgment. On April 14, 2005, the Court denied Defendant's Motion to Dismiss as moot electing to determine the issue with the Summary Judgment. *See* the Court's *Order* signed April 14, 2005 [Docket No. 91].

that are equivalent to the rights provided by 17 U.S.C. § 106. *See* 17 U.S.C. § 301(b); *Daboub v. Gibbons*, 42 F.3d 285, 288 (5th Cir. 1995).

20.    PLAINTIFF'S BREACH OF CONTRACT CLAIMS ARE NOT EQUIVALENT TO COPYRIGHT.

"The [Fifth] Circuit has consistently recognized that a legitimate breach of contract allegation serves to defeat [copyright] preemption." *Dorsey v. Money Back Music, Inc.*, 304 F. Supp. 2d 858, 865 (E.D. La. 2003). One of the more cited opinions on this issue (containing several illustrative examples) is from the Seventh Circuit in *ProCD, Inc. v. Zeidenberg*:

> Rights 'equivalent to any of the exclusive rights within the general scope of copyright' are rights established by *law* – rights that restrict the options of persons who are strangers to the author. Copyright law forbids duplication, public performance, and so on, unless the person wishing to copy or perform the work gets permission; silence means a ban on copying. A copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create 'exclusive rights.'

> [W]hether a particular license is generous or restrictive, a simple two-party contract is not 'equivalent to any of the exclusive rights within the general scope of copyright' and may be enforced.

*ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454-55 (7th Cir. 1996).

21.    Following *ProCD*, the majority of the courts addressing the issue whether copyright preempts contract claims have found **against** preemption. *See*:

- *Sharp v. Patterson*, No. 03 Civ. 8772 (GEL), 2004 U.S. Dist. LEXIS 22311, at *19 (S.D.N.Y. November 3, 2004) ("State law breach of contract claims are 'generally not preempted by the Copyright Act,' so long as the claim is 'based on allegations of a contractual right not existing under copyright law.") (*citing Logicom*, 2004 U.S. Dist. LEXIS 15668 *citing* H.R. Rep. No. 1476, 94th Cong. 2d Sess. 132, reprinted in 1976 U.S.C.C.A.N. 5959, 5748 ("Nothing is the bill derogates from the rights of parties to contract with each other and to sue for breaches of contract.");

- *Hucksold v. HSSL, L.L.C.*, 344 F.Supp.2d 1203, 1207-08 (E.D. Mo. 2004) ("Courts generally read preemption clauses to leave private contracts unaffected.

A copyright is a right against the world.  Contracts, by contrast do not create 'exclusive rights.') (*citing Lipscher v. LRP Productions, Inc.*, 266 F.3d 1305, 1318 (11th Cir. 2001) ("Claims involving two-party contracts do not create exclusive rights, but rather, affect only their parties.").

- *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1325 (Fed. Cir. 2003) *cert. denied*, 539 U.S. 928 (2003) (The Court acknowledged that *ProCD* found that the mutual assent and consideration required by a contract claim renders that claim qualitatively different from copyright infringement and held that copyright law did not preempt breach of contract claims for violation of a provision that prohibited reverse engineering);

- *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 456 (6th Cir. 2001) *cert. denied* 534 U.S. 1114 (2002) (The Court held that the extra element of a promise to pay rendered the action for breach of an implied contract qualitatively different that a copyright infringement claim and this difference includes, 'the requirement of proof of an enforceable promise and a breach thereof);

- *National Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 431-33 (8th Cir. 1993), cert. denied, 510 U.S. 861, 114 S.Ct. 176, 126 L.Ed.2d 136 (1993) (The court held that the contractual restriction on use of software made the breach of contract action qualitatively different that an action for copyright);

- *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990) (The court held that breach of contract for using drawings in sales materials (as opposed to mere reproduction), as prohibited by the contract, was not preempted by copyright law because it involved the extra element of a promise);

- *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988) (The court held that breach of contract claim was not preempted because breach of contract was a distinct cause of action);

- *Hotsamba v. Caterpillar, Inc.*, No. 01-C-5540, 2004 U.S. Dist. LEXIS 4882, at *15-16 (N.D. Ill. March 25, 2004) ("This view of copyright preemption is not unique to the Seventh Circuit, and the majority of the courts addressing preemption of breach of contract claims by copyright have found that such claims are not preempted.");

- *Architectronics, Inc. v. Control Systems, Inc.*, 935 F. Supp. 425, 439 (S.D. N.Y. 1996) (Following *ProCD*, the Court held that a breach of contract is not equivalent to copyright protection because a breach of contract claim requires an extra element that renders the claim qualitatively different from a claim of copyright infringement: a promise by the defendant.); and

- *Computer Associates Int'l, Inc. v. Qwest Software*, No. 02-C-4721, 2003 U.S. Dist. LEXIS 12815, at *5 (N.D. Ill. July 23, 2003) (The court denied the preemption request based on a contractual duty to protect software source code providing that "Preemption generally does not force courts to interfere in contractual rights bargained for by private parties.").

22.     The License Agreement for Voyager 2.0.1 entered into by Defendant provides

restrictions on Voyager's use.  The License Agreement also confirm a requirement that the

Licensee prevent those under the Licensee' control or in the Licensee's service from violating the

License Agreement, as follows (emphasis added):[21]

> **By downloading, using or copying Voyager(tm) or any portion thereof, Licensee agrees to abide by the intellectual property laws and all other applicable laws of the United States of America, and to all of the terms and conditions of this Agreement, and agrees to take all necessary steps to ensure that the terms and conditions of this Agreement are not violated by any person or entity under the Licensee's control or in the Licensee's service.**
>
> . . .
>
> Licensee may use Voyager(tm) internally for any purposes and in any systems provided that any distribution, sale or license of systems including Voyager(tm) to third parties are restricted as stated in this agreement.
>
> . . .
>
> **Licensee may use Voyager(tm) internally for any purposes and in any systems provided that any distribution, sale or license of systems including Voyager(tm) or developed using Voyager(tm) to third parties are restricted as stated in this agreement.**  Licensee may develop and distribute to third parties applications using Voyager(tm) that execute on general purpose computing platforms except as restricted below.  Specifically, Licensee may distribute binaries (.class files) derived from or contained within Voyager(tm) ("Binaries") provided that:
>
> . . .
>
> **The Binaries are not packaged with, or embedded in, hardware.**
>
> . . .
>
> **The Binaries are not packaged with, embedded in, distributed as part of, or publicly associated with any software that is marketed or sold.**

---

[21] *See* PL. APP. 2 (Exhibit "A" at ¶ 5); and PL. APP. 86-87 (Exhibit "A-3"); PL. APP. 89-90 (Exhibit "B" at ¶ 3); and PL. APP. 97-98 (Exhibit "B-1"); PL. APP. 106-107 (Exhibit "C" at ¶¶ 3-5); and PL. APP. 113-114 (Exhibits "C-1" and "C-2").

23. These restrictions on distribution and control over third parties in Defendant's service/control are not the equivalent of copyright protection against unauthorized reproduction. Therefore, these restrictions take the breach of contract claim out of copyright preemption. *See supra*; *see also*, *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737, 756-57 (D. Md. 2003) citing *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 186 F. Supp. 2d 592, 594-95 (D. Md. 2002) ("The unique terms of the parties' express subscription agreement, if proved, 'establish [] a private law governing fair use of the copyrighted works *inter partes*, which makes the claim qualitatively different from a simple copyright case, in which there is no 'private law' defining what is and is not fair use."); *Hucksold v. HSSL, L.L.C.*, 344 F.Supp.2d 1203, 1207-08 (E.D. Mo. 2004) (contract claim against licensee for permitting a third party to copy software).

24. <u>Plaintiff's Common Law Claims are Not Equivalent to Copyright.</u> Plaintiff's claims for *quantum meruit* and unjust enrichment are likewise not preempted for the reason that the rights Plaintiff seeks to enforce are not equivalent to the exclusive rights of the Copyright Act. The opinion in *Schuchart & Associates, Professional Engineers, Inc. v. Solo Serve Corp.*, 540 F. Supp. 928 (W.D. Tex. 1982) is directly on point. As in *Schuchart & Associates*, Plaintiff seeks to recover the value of the goods and services provided by Plaintiff and obtained by Defendant – namely the value of licensing fees that Defendant would be required to pay to use Voyager in the manner in which it was used.[22] *See*

- *Schuchart & Associates, Professional Engineers, Inc. v. Solo Serve Corp.*, 540 F. Supp. 928, 945-48 (W.D. Tex. 1982) (The rights Plaintiff seeks to enforce [quantum meruit and unjust enrichment] are fundamentally different in kind from the exclusive rights in copyrighted works to reproduce a copyrighted work, to prepare a derivative work or to distribute copies of copyrighted work. Plaintiffs seek not to enforce their rights to copy and distribute their plans and drawings. Nor do Plaintiffs seek to recover damages analogous to the actual damages

---

[22] *See Plaintiff's Second Amended Complaint* at ¶¶ 24-27 and 29-31.

provided by § 504(b). Rather, Plaintiffs seek to recover under quantum meruit theory the value of the services rendered by Defendants' use of the plans and specifications prepared by Plaintiffs. Thus, both the rights Plaintiffs seek to enforce and the measure of damages under the unjust enrichment theory differ from those under copyright law. Section 301 has not preempted Plaintiffs' cause of action for unjust enrichment."); and

- *Werlin v. Reader's Digest Asso.*, 528 F. Supp. 451, 465-67 (S.D. N.Y. 1981) ("The Court held that the elements of a quasi-contract claim are significantly different from those of a federal copyright claim; moreover, the rights that the doctrine of quasi contract [quantum meruit and unjust enrichment] seeks to protect are qualitatively different from those that federal copyright law endeavors to preserve. Under such circumstances, the courts of this Circuit have consistently declined to find that state law has been preempted by the Copyrights Act.").

25.    As Plaintiff's claims for breach of contract, *quantum meruit*, and unjust enrichment are qualitatively different from or provide an additional element to Plaintiff's claim of copyright violation, Plaintiff's common law claims are not preempted by 17 U.S.C. § 301.

## C. GENUINE ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ON AFFIRMATIVE DEFENSES OF LACHES, ESTOPPEL, WAIVER AND LIMITATIONS

26.    The following material issues of genuine facts, singularly or jointly, preclude summary judgment based on the affirmative defenses of laches, estoppel, waiver and limitations:

- Defendant admits that Objectspace did NOT have knowledge of Defendant's use of Voyager in Interaction Recorder. *See* PL. APP. 159 and 163 (Exhibit "E" at p. 15, lines 15-18; p. 29, line 25 through p. 30, line 21).

- Defendant cannot show that the alleged communication imputing knowledge occurred after Defendant incorporated Voyager in Interaction Recorder. *See* PL. APP. 158, 159, 166, 167 (Exhibit "E" at p. 11, lines 2-17; p. 13, lines 15-23; p. 16, lines 12-15; p. 43, line 21 through p. 44, line 7; p. 47, line 19 through p. 48, line 23); Def's App. at p. 28-29.

- Defendant fails to present any competent evidence that Objectspace had knowledge of Defendant's specific use of Voyager in Interaction Recorder. *See* PL. APP. 158, 159, 166, 167 (Exhibit "E" at p. 11, lines 2-17; p. 13, lines 15-23; p. 16, lines 12-15; p. 43, line 21 through p. 44, line 7; p. 47, line 19 through p. 48, line 23); Def's App. at p. 28-29.

- Defendant fails to present any competent evidence that Objectspace or Plaintiff had knowledge of (1) Defendant's sale of Interaction Recorder that includes Voayger; and (2) Defendant's packaging Interaction Recorder with hardware (either directly or through those in its service or control).

- Plaintiff presents evidence that Objectspace has no written records or information indicating that it had any knowledge of Defendant's specific use of Voyager in Interaction Recorder. *See* PL. APP. 91 (Exhibit "B" at ¶ 7).

- Plaintiff presents evidence that it did not learn of Voyager's use in Interaction Recorder until March 26, 2003 (6 months before filing suit). *See* PL. APP. 2 (Exhibit "A" at ¶ 4); and PL. APP. 92 (Exhibit "B" at ¶ 7).

- Plaintiff presents evidence that it took Defendant in excess of a year to remove Voyager from Interaction Recorder after Plaintiff's demand to do so. *See* PL. APP. 203 (Exhibit "F" at p. 29, line 12 through p. 32, line 1).

27.   <u>Laches</u>.   Defendant has not (and cannot) show that Plaintiff (or Objectspace) delayed in filing suit for an unreasonable and inexcusable length of time after Plaintiff (or Objectspace) should have known of its claims against Defendant. Defendant has the burden to establish that Plaintiff knew of Defendant's inclusion of Voyager in Interaction Recorder to establish a laches defense.[23] As Defendant's own evidence establishes,[24] Defendant never discussed any application that incorporates Voyager with Plaintiff or Objectspace. Absent some knowledge by Plaintiff or Objectspace that Defendant was using Voyager in an application that was marketed and sold and that was sold packaged or installed on hardware by resellers, Defendant's affirmative defense of laches fails as a matter of law.[25]

---

[23] *See Compaq Computer Corp v Ergonome, Inc.*, 210 F. Supp. 2d 845, 848 (S.D. Tex. 2002) (Laches defense requires proof of unexcusable delay after plaintiff knew or should have known of claims).

[24] *See* PL. APP. 158, 159, 166, 167 (Exhibit "E" at p. 11, lines 2-17; p. 13, lines 15-23; p. 16, lines 12-15; p. 43, line 21 through p. 44, line 7; p. 47, line 19 through p. 48, line 23); Def's App. at p. 28-29.

[25] *Id.*

28.    <u>Estoppel</u>.  Defendant has not (and cannot) show that Plaintiff (or Objectspace) knew of Defendant's infringing conduct, breach of contract and unauthorized use.  As admitted by Defendant, Objectspace never sought fees from Defendant because Objectspace did not know of Defendant's incorporation of Voyager in Interaction Recorder.[26]  In addition, contrary to Defendant's allegations, Objectspace's co-founder, Graham Glass, testified that Defendant <u>did</u> intend to recover royalties from customers such as Defendant.[27]

29.    Nor has Defendant shown that it was ignorant of the true facts.  The License Agreement specifies the restrictions on the distribution and use of Voyager.  Defendant violated three of the restrictions.[28]  Defendant had the applicable License Agreement for Voyager 2.0.1[29] – it just chose to ignore its terms and restrictions[30] – despite the fact that the person who determined to use Voyager in Interaction Recorder (Ganyo) agreed that the license terms "would most likely" apply over any other statements.[31]  Therefore, Defendant failed to show undisputed facts to establish any of the elements of the affirmative defense of estoppel.[32]

---

[26] *See* PL. APP. 163 (Exhibit "E" at p. 29, line 25 through p. 30, line 21).

[27] *See* PL. APP. 470-72 and 477-78 (Exhibit "I" at p. 61, line 14 through p. 63, line 11; p. 66, line 3 through p. 69, line 10); and PL. APP. 496 (Deposition Exhibit "N").

[28] *See Plaintiff's Motion for Summary Judgment* at pp. 8-11.

[29] *See* Def's App. at p. 7 at ¶ 19 and pp. 28-29.

[30] *See* Def's App. at 7 (¶19) and 28-29; PL. APP. 90 [Exhibit "B" at ¶¶ 4-5] and PL. APP. 99-100 [Exhibits "B-2" and "B-3"]; *see also*, PL. APP. 145 [Exhibit "E" at p. 46, lines 2-6]; and PL. APP. 162-63 [Exhibit "E" at p. 28, line 14 through p. 29, line 6].

[31] *See* PL. APP. 167 (Exhibit "E" at p. 47, line 19 through p. 48, line 23).

[32] *See Carson v. Dynegy, Inc* , 344 F.3d 446, 453 (5th Cir. 2003) (To establish estoppel as a defense to copyright, Defendant must prove (1) the plaintiff <u>must know</u> the facts of Defendant's infringing conduct; (2) the plaintiff must <u>intend</u> that its conduct shall be acted upon or must so act that the Defendant has a right to believe it so intended; (3) the defendant <u>must</u> be ignorant of the true facts; and (4) the defendant must rely on the plaintiff's conduct to it injury.") (emphasis added).

30.    <u>Waiver</u>. Just as with laches and estoppel, Defendant cannot show knowledge on

the part of Plaintiff (or Objectspace).[33] Without a *known* relinquishment of its rights, the defense

of waiver fails as a matter of law.[34] Defendant admits that Objectspace would not have known

how Defendant used Voyager and that if Objectspace didn't know, it could not have taken any

action against Defendant.[35] Moreover, the fact that Plaintiff (or Objectspace) provided Voyager

for download for free (subject to license terms specifically prohibiting the commercial use of

Voyager as employed by Defendant), does not constitute a waiver of Plaintiff's rights of

enforcement.[36]

31.    <u>Limitations</u>. Regarding limitations, a similar knowledge requirement is necessary

for Plaintiff's causes of action to accrue. Civil actions brought under the Copyright Act must

commence within three years from the time the claim accrues.[37] A claim under the Copyright

Act does not accrue until the injured party *knows* of the violation or is charged with such

knowledge.[38] Thus, the general equitable tolling doctrines, including the discovery rule, apply to

copyright infringement claims.[39]

---

[33] *See* PL. APP. 158 (Exhibit "E" at p. 11, lines 2-17); PL. APP. 166 (Exhibit "E" at p. 43, line 21 through p. 44, line 7); Def's App. at 6; PL. APP. 158-159 (Exhibit "E" at p. 11, line 21 through p. 13, line 7)PL. APP. 159 (Exhibit "E" at p. 13, line 24 through p. 14, line 25; p. 15, lines 15-18; p. 16, lines 12-15; and PL. APP. 163 (Exhibit "E" at p. 31, lines 20-24).

[34] *See Bott v. J.R. Shea Co., Inc.*, 299 F.3d 508, 513 (5th Cir. 2002) ("Waiver is defined in Texas as the intentional relinquishment of a known right, or intentional conduct inconsistent with claiming that right.").

[35] *See* PL. APP. 163 (Exhibit "E" at p. 29, line 25 through p. 30, line 21).

[36] *See e.g., Veeck v. Southern Bldg Code Congree Int'l, Inc.*, 241 F.3d 398, (5th Cir. 2001) (Parties can provide free access to copyrighted materials on the internet and still retain enforcement of their copyrights).

[37] *See* 17 U.S.C. § 507(b).

[38] *See Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 889 (6th Cir. 2004) ("A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with

32.     For breach of contract, the limitations period to bring an action is four (4) years from the date the cause of action accrues.[40]  Determining when a cause of action accrues is a question of law, not fact.[41]  A cause of action for breach of contract typically accrues when the contract is breached *or when the claimant has notice of facts sufficient to place him on notice of the breach*.[42]  Accrual of a cause of action is deferred when allegations of fraud or fraudulent concealment apply, and when the discovery rule applies.[43]  The discovery rule applies when the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.[44]

33.     In a recent opinion, the Southern District of Texas described the applicability of the discovery rule with respect to a breach of contract action as follows:

---

such knowledge.") (citing *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994)); *Hotaling v. Maher*, 118 F.3d 199, 202 (4th Cir. 1997) (same).

[39]  *See Barbour v. Head*, 178 F. Supp. 2d 758, 765 (S.D. Tex. 2001) (noting that there is "nothing in the law of the Fifth Circuit [that] forecloses the application of the discovery rule or any other equitable tolling rules to copyright infringement actions"); *see also Daboub v. Gibbons*, 42 F.3d 285, 291 & n.10 (5th Cir. 1995) (impliedly determined that the discovery rule applied in the context of copyright infringement claims when the court noted that the discovery rule did not apply to some of plaintiff's state law causes of action, but proceeded to apply the discovery rule to the remaining causes of action, one of which was brought under the Copyright Act).

[40]  *See* TEX. CIV. PRAC. & REM. CODE §§ 16.004; 16.051; *Continental Casualty Co. v. Dr. Pepper Bottling Co of Texas, Inc*, Civil Action No. 3:03-CV-1207-BH, 2005 U.S. Dist. LEXIS 2788, at *9 (N.D. Tex. February 23, 2005) ("Pursuant to TEX. CIV. PRAC. & REM. CODE § 16.051, the statute of limitations for a cause of action arising out of breach of contract is four years.  Therefore, a breach of contract claim must be brought no later than four years after the date cause of action accrues.") (*citing Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002)); *National Utility Service, Inc. v. Xanser Corp.*, No. 3:03-CV-0878-P, 2003 U.S. Dist. LEXIS 21758, at *10 (N.D. Tex. December 1, 2003) (Under Texas law, causes of action for breach of contract are governed by a four-year statute of limitations.  *See* TEX. CIV. PRAC. & REM. CODE § 16.004).

[41]  *Continental Casualty Co.*, 2005 U.S. Dist. LEXIS at *9-10.

[42]  *Continental Casualty Co.*, 2005 U.S. Dist. LEXIS at *10 (*citing Stine*, 80 S.W.3d at 592).

[43]  *Continental Casualty Co.*, 2005 U.S. Dist. LEXIS at *10, n.2.

[44]  *Id.*

The discovery rule is a "very limited exception to statutes of limitation" and only applies when (i) the nature of the injury incurred is "inherently undiscoverable" and (ii) the evidence of the injury is "objectively verifiable." *Computer Assoc. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996); *In re Coastal Plains*, 179 F.3d 197, 215 (5th Cir. 1999); *Prieto v. John Hancock Mut'l Life Ins. Co.*, 132 F.Supp.2d 506, 513 (N.D. Tex. 2001). The "inherently undiscoverable" requirement is met when the injured party is unlikely to discover the injury during the limitations period despite due diligence. *See S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996); *Computer Assoc.*, 918 S.W.2d at 456; *Coastal Plains*, 179 F.3d at 215. The injury does not have to be impossible to discover, but a party's mere failure to discover the injury is not sufficient to meet the requirements. *S.V.*, 933 S.W.2d at 7; *Coastal Plains*, 179 F.3d at 215. To be inherently undiscoverable the wrong and the injury "must be unknown to the plaintiff because of their very nature and not because of any fault of the plaintiff." *Coastal Plains*, 179 F.2d at 214-15. The requirement of "objective verifiability" requires physical or other evidence, such as an objective eyewitness account, to corroborate the existence of the claim. *Id.* "An injury is 'objectively verifiable' if the presence of the injury and the producing wrongful act cannot be disputed." *Howard v. Fiesta Texas Show Park, Inc.*, 980 S.W.2d 716, 720 (Tex. App.—San Antonio 1998, pet. denied).

*Hunton v. Guardian Life Ins. Co. of America*, 243 F.Supp 2d 686, 698 (S.D. Tex. 2001). The

Court in *Hunton* went on to hold that, if the breach is concealed from the plaintiff, Texas courts

will also apply the discovery rule "until the plaintiff discovers or should have discovered the

nature of the injury." *Hunton*, 243 F.Supp.2d at 704 (citing *Houston Endowment, Inc v. Atlantic

Richfield Co.*, 972 S.W.2d 156, 159 (Tex. App.—Houston [1st Dist.] 1998, no writ).

34.     The facts in this case set out the necessary elements for the discovery rule to apply

– both under the concealment rule and that the injury was inherently undiscoverable and

objectively verifiable.  As Defendant downloaded, used and incorporated Voyager 2.0.1 in a

manner unknown to Plaintiff or Objectspace, the injury was inherently undiscoverable.  Plaintiff

could not have learned (and did not learn) of Defendant's violation of the Voyager restrictions

until Defendant contacted Plaintiff seeking support for Voyager.[45] The injury and breach were unknown to Plaintiff by the nature of Defendant's use of Voyager and not through any fault of Plaintiff. Further, the objectively verifiable requirement is satisfied by Defendant's unauthorized use of Voyager. Defendant admits that it markets and sells an application containing Voyager 2.0.1[46] and Defendant admits that its resellers (in Defendant's service and control) sell Interaction Recorder packaged with hardware.[47] Therefore, the discovery rule exception must apply in this case.

35.     In addition, the Court should find that Defendant concealed the breach from Plaintiff. Despite allegedly having conversations with Objectspace regarding the permissible uses of Voyager, Defendant admits that it did not tell Objectspace that Voyager was being used in an application that was marketed and sold and/or that the application was distributed, sold, or packaged with hardware. Therefore, the contract claim would not accrue until the Plaintiff discovered (or should have discovered the nature of the injury) on March 26, 2003.[48]

36.     Under Texas law, causes of action for quantum meruit are governed by the four-year statute of limitations applicable to actions for debt.[49] Causes of action for unjust enrichment

---

[45] *See* PL. APP. 2 (Exhibit "A" at ¶ 4); PL. APP. 88 (Exhibit "A-3)"; *see also*, PL. APP. 92 (Exhibit "B" at ¶ 8); and PL. APP. 104 [Exhibit "B-5"].

[46] *See* PL. APP. 126 (Exhibit "C" at Response No. 5).

[47] *See* PL. APP. 239-241, 244, 245, and 249 (Exhibit "G" at p. 22, l. 23 through p. 31, l. 10; p. 38, l. 10 through p. 40, l. 13; p. 42, l. 24 through p. 43, l. 6; p. 47, l. 25 through p. 48, l. 7; p. 62, l. 1 through p. 63, l. 2; and p. 72, l. 11-21); and PL. APP. 280-81, 282-87, AND 288-297 (Dep. Exhibits 5, 6, 7, and 13); *see also*, PL. APP. 372 (Exhibit "H" at p. 25, l. 12 through p. 27, l. 3); *see also*, PL. APP. 371-72 (Exhibit "H" at p. 24, l. 10 through p. 27, l. 3); and PL. APP. 386-459 (Dep. Exhibits 8 and 9).

[48] *See Hunton*, 243 F.Supp.2d at 704.

[49] *See* TEX. CIV. PRAC. REM. CODE 16.004(a)(3); *See also, Berryhill v. Findeisen*, 1996 Tex. App. LEXIS 4100 (Tex. App.—Austin 1996 (no pet.); *Camacho v. Sullivan Transfer Co.*, 577 S.W.2d 793, 794 (Tex. Civ. App.—Waco 1979, no writ).

are governed by a two-year statute of limitations.[50]  The discovery rule can be applied to claims

such as quantum meruit and unjust enrichment.[51]

### D.  GENUINE ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ON AFFIRMATIVE DEFENSES OF EXPRESS (ORAL OR WRITTEN) AND IMPLIED LICENSE

37.     The following material issues of genuine facts, singularly or jointly, preclude

summary judgment based on Defendant's affirmative defenses of an express or implied license:

- •       Defendant relies on two alleged communications with its corporate representative
        Scott Ganyo to create an "express license."

        Graham Glass Communication:  Ganyo relies on a conversation with Graham
        Glass where Ganyo cannot confirm whether he worked for Defendant at the time
        of the conversation. See PL. APP. 158 (Exhibit "E" at p. 11, lines 2-17); PL.
        APP. 166 (Exhibit "E" at p. 43, line 21 through p. 44, line 7). No conversation
        regarding any expected use of Voyager by Ganyo or Defendant took place in the
        conversation. See Def's App. at 6; PL. APP. 158-159 (Exhibit "E" at p. 11, line
        21 through p. 13, line 7).

        Conversation with unidentified female:[52]  Like the Graham Glass conversation,
        Ganyo admits that he doesn't know if he was working on Interaction Recorder yet,

---

[50]  See HECI Exploration Co., v. Neel, 982 S.W.2d 881, 885, 42 Tex. Sup. Ct. J. 361 (Tex. 1998);
see also, Mobil Producing Texas & N.M. v. Cantor, 93 S.W.3d 916, 919 (Tex. App.—Corpus Christi
2002, no pet.).

[51]  See e.g., Robinson v. Texas Auto Dealers Association, No. 5:97-CV-273, 2003 U.S. Dist.
LEXIS 10598, at *10 (E.D. Tex. March 27, 2003).

[52]  Conversations with "unknown" agents are incompetent summary judgment evidence and cannot
support a claim or defense as a matter of law, See Taylor v The Stanley Works, No. 4:01-CV-120, 2002
U.S. Dist. LEXIS 26892, at *5 (E.D. Tenn. July 16, 2002) ("Davidson's affidavit concerning his oral
conversations with an unidentified employee of the United States Postal Service does not salvage the
matter for the plaintiffs. When Davidson seeks to repeat what he alleges he was told by someone at the
United States Postal Service, this is hearsay and inadmissible under the Federal Rules of Evidence. The
Court will not rely on hearsay."); Phillips v. Holladay Property Services, Inc., 937 F. Supp. 32, 36 (D.C.
1996) (finding plaintiff's declaration to be inadmissible hearsay because plaintiff failed to identify who, if
anyone, provided the information); Thomas v. Stone Container Corp., 922 F. Supp. 950, 957 (S.D. N.Y.
1996) (finding that a statement in plaintiff's affidavit made by an unidentified employee of defendant was
"classic hearsay"); Miles v. Burris, 54 F.3d 284, 288 (7th Cir. 1995) (finding that an "anonymous tip" was
inadmissible hearsay); Republic Nat'l Bank of New York v Luis Winston, Inc., 107 A.D.2d 581, 582 (N.Y.
App. Div. 1st Dep't 1985) (Where an affiant's "knowledge has been obtained either from unnamed and
unsworn employees or from unidentified and unproduced work records, the affidavit lacks any probative

---

there was no discussion of Ganyo or Defendant using Voyager in any application, and no discussion of Ganyo using Voyager in Interaction Recorder. *See* PL. APP. 159 (Exhibit "E" at p. 13, line 24 through p. 14, line 25; p. 15, lines 15-18; p. 16, lines 12-15; and PL. APP. 163 (Exhibit "E" at p. 31, lines 20-24).

- Defendant admits that Voyager version 2.0.1 was incorporated in Interaction Recorder (and cannot confirm whether any earlier version was incorporated). *See* PL. APP. 199-200; 202-03 (Exhibit "F" at p. 16, line 15 through p. 18, line 23; p. 28, line 21 through p. 29, line 6); and PL. APP. 146 and 148 (Exhibit "E" at p. 51, lines 20-25; and p. 60, lines 13-17).

- Defendant downloaded and agreed to the terms of the License Agreement for Voyager 2.0.1 on December 23, 1998. *See* Def's App. at 7 (¶19) and 28-29; PL. APP. 90 (Exhibit "B" at ¶¶ 4-5) and PL. APP. 99-100 (Exhibits "B-2" and "B-3"); *see also*, PL. APP. 145 (Exhibit "E" at p. 46, lines 2-6); and PL. APP. 162-63 (Exhibit "E" at p. 28, line 14 through p. 29, line 6).

38.     The only evidence of the express or implied license comes from the misleading

Bad Faith Ganyo Statement, that, pursuant to FRCP 56(g) should be stricken due to its

contradictions. *See Plaintiff's Motion to Strike Statement of Scott Ganyo*.

39.     <u>Express License</u>.  Should the Court nevertheless consider the Ganyo Statement, an

express (or implied license) does not exist.  Contrary to Defendant's assertions, Defendant's

evidence does *not* indicate that Objectspace provided Defendant with any express license to

incorporate Voyager into Interaction Recorder (or any other software for that matter).  The

evidence provides as follows:

- Until March 23, 1998, Objectspace provided Voyager for free for most – not all – commercial uses, *subject to the terms of the applicable license agreement.*[53]

---

value"); *Cf, Croce v. Bromley Corp.*, 623 F.2d 1084, 1088 and n. 9 (5th Cir. 1980) (Court stated that evidence was "sparce" and that "reasonable inferences from the evidence left the court with the firm belief that no such communication occurred" when witness could not even identify name of person contacted).

[53] *See* PL. APP. 82-83; 93-94; 109-110 (prohibiting use of Voyager in an application that is "packaged with embedded in hardware" and requiring Licensees "to take all necessary steps to ensure that the terms and conditions of this Agreement are not violated by any person or entity under the Licensee's control or in the Licensee's service." *See also*, PL. APP. 106 (Exhibit "C" at ¶ 3); PL. APP. 113-114.

- On March 24, 1998, Objectspace put Defendant on notice of the changes in the license agreement.[54]

- Objectspace created an exception to the additional change to the License Agreements for persons who downloaded Voyager for a specific project and used Voyager in that product prior to March 23, 1998. For those who wanted and qualified to obtain a later release of Voyager pursuant to this policy, Objectspace provided an Acknowledgement form to execute.[55]

- On December 23, 1998, nine (9) months after the change in License Agreement terms, Defendant downloaded Voyager 2.0.1 and agreed to the terms of the License Agreement for Voyager 2.0.1.[56]

- Defendant thereafter incorporated Voyager 2.0.1 into Interaction Recorder[57] and distributed Interaction Recorder in a manner that violates three of the restrictions contained in the Voyager 2.0.1 License Agreement.[58]

- Defendant did not present any evidence that an earlier version of Voyager was used in Interaction Recorder and that version 2.0.1 is the only confirmed version of Voyager in Interaction Recorder.[59] Therefore, it would be impossible for Defendant's use of Voyager in Interaction Recorder to qualify under the grandfathered list.

---

[54] *See e.g*, PL. APP. 84-87; 95-98; 111-113 (prohibiting use of Voyager in an application that is "packaged with embedded in hardware" and requiring Licensees "to take all necessary steps to ensure that the terms and conditions of this [license] Agreement are not violated by any person or entity under the Licensee's control or in the Licensee's service" *and adding* the prohibition of including Voyager in "any software that is market and sold.") *See also*, PL. APP. 106-07 (Exhibit "C" at ¶¶ 4-5); PL. APP. 113-114.

[55] *See* PL. APP. 107 (Exhibit "C" at ¶ 7) and PL. APP. 116 (Exhibit "C-4").

[56] *See* Def's App. at 7 (¶19) and 28-29; PL. APP. 90 (Exhibit "B" at ¶¶ 4-5) and PL. APP. 99-100 (Exhibits "B-2" and "B-3"); *see also*, PL. APP. 145 (Exhibit "E" at p. 46, lines 2-6); and PL. APP. 162-63 (Exhibit "E" at p. 28, line 14 through p. 29, line 6).

[57] *See* PL. APP. 199-200; 202-03 (Exhibit "F" at p. 16, line 15 through p. 18, line 23; p. 28, line 21 through p. 29, line 6); PL. APP. 146 and 148 (Exhibit "E" at p. 51, lines 20-25; and p. 60, lines 13-17).

[58] *See* PL. APP. 126 [Exhibit "C" at Response No. 5]; PL. APP. 3, 86-87 (Exhibit "A" at ¶¶ 9-11 and Exhibit "A-2"); PL. APP. 106-07 (Exhibit "C" at ¶¶ 4-7); PL. APP. 109-114 (Exhibits "C-1" and "C-2"); PL. APP. 2-3 (Exhibit "A" at ¶¶ 6-8, 11); PL. APP. 82-87 (Exhibit "A-2"); and PL. APP. 470-72 and 477-78 (Exhibit "I" at p. 61, line 14 through p. 63, line 11; p. 66, line 3 through p. 69, line 10); PL. APP. 496 (Deposition Exhibit N).

[59] *See* PL. APP. 199-200; 202-03 (Exhibit "F" at p. 16, l. 15 through p. 18, l. 23; p. 28, l. 21 through p. 29, l. 6).

---

- Defendant's corporate representative confirmed that Defendant was not on the grandfathered list – and did not inform Objectspace of Defendant's use of Voyager in Interaction Recorder.[60]

- At no time did Defendant inform Objectspace of its intention to use Voyager in Interaction Recorder – or any other application.[61]

40.     Defendant cannot meet its burden based on the genuine issues of material facts provided by Defendant's own testimony and the testimony of third party witnesses, Graham Glass and Timothy Milovich.  Therefore, summary judgment based on the affirmative defense of express license is improper.

41.     <u>Implied License</u>.  Defendant's assertion that an implied license exists from the "totality of the circumstances," likewise fails.  "[A]n implied nonexclusive license arises when (1) a person (the licensee) requests the creation of a work, (2) the creator (licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work."[62]  As Defendant cannot satisfy these elements, but attempts to do so by a selective, and misleading presentation of the summary judgment record (including the use of fiction).  For example, see the statements below (the whole truth is in italics):

> Objectspace made "Voyager available for download for free"— *subject to the restrictions provided in the License Agreement;*[63]

---

[60]  *See* PL. APP. 159 (Exhibit "E" at p. 13, line 24 through p. 14, line 10).

[61]  PL. APP. 159 (Exhibit "E" at p. 14, line 11 through line 25); PL. APP. 159 (Exhibit "E" at p. 15, lines 15-18).

[62]  *See Lulirama Ltd., Inc. v. Axcess Broadcast Services, Inc.*, 128 F.3d 872, 879 (5th Cir. 1997) *citing I.A.E., Inc. v Shaver*, 74 F.3d 768, 775 (7th Cir. 1996) and *Effects Assocs. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990).

[63]  To download or install Voyager, the user had to agree to the license agreement terms. *See* PL. APP. 90 (Exhibit "B" at ¶¶ 4-5); and PL. APP. 99-100.

Objectspace encouraged developers to incorporate Voyager into its own products—*subject to the license agreement terms*;[64]

Objectspace made posts on Java and the Voyager Interest group, saying that is free—*for most commercial uses and subject to the license agreement terms*;[65]

Objectspace discussed with Interactive the intended uses and approving such use—*contradicted by Defendant's own corporate representatives*;[66]

Objectspace did not object to the use—*contradicted by Defendant's own corporate representative (admits Objectspace had no knowledge and wouldn't know to object)*.[67]

42.   Novation / Waiver / Parol Evidence also bars Defendant's Defenses of Express/Implied License. Once Defendant agreed to the terms of the License Agreement for Voyager 2.0.1, any alleged prior express or implied license was superseded – a novation occurred.[68] Similarly, if Defendant did have an alleged express or implied license (which it could not), it waived any such rights by entering into the License Agreement for Voyager 2.0.1.[69]

---

[64] Even the evidence relied upon by Defendants indicates that the information either refers the person to the website containing the license agreement terms, indicates that the Voyager is free for only most commercial uses, or specifically refers the reader to review the license agreement for the terms and restrictions. *See e.g.*, Def's App. at pp. 6 (¶ 14), 15, 16, 18, 28, 33, 37, 50, 53, 54, 55, 57, 78, 79, 81, 82.

[65] *Id.*

[66] *See* PL. APP. 158 (Exhibit "E" at p. 11, lines 2-17); PL. APP. 166 (Exhibit "E" at p. 43, line 21 through p. 44, line 7); PL. APP. 158-159 (Exhibit "E" at p. 11, line 21 through p. 13, line 7); PL. APP. 159 (Exhibit "E" at p. 13, line 24 through p. 14, line 25; p. 15, lines 15-18; p. 16, lines 12-15; and PL. APP. 163 (Exhibit "E" at p. 31, lines 20-24).

[67] *See* PL. APP. 163 (Exhibit "E" at p. 29, line 25 through p. 30, line 21).

[68] *See Chastain v Cooper & Reed*, 250 S.W.2d 652, 659 (Tex. Civ. App.—Dallas 1952) (Elements of a novation: (1) Existence of the prior valid obligation of Chastain to Whiteley-Phillips; (2) the agreement of the parties to a new contract; (3) which was a valid contract; (4) the extinguishment of the old contract by the substitution of the new valid contract); *Southern Poultry Processing, Inc. v. Dewitt Farms*, 639 S.W.2d 702, 705 (Tex. App.—Tyler 1982) (It is not necessary for the new contract to provide expressly for the extinguishment of the old obligation. The intent to extinguish the old contract may be inferred from the facts, circumstances and conduct of the parties when the new contract is executed).

[69] *See Bott v J.R. Shea Co., Inc.*, 299 F.3d 508, 513 (5th Cir. 2002) ("Waiver is defined in Texas as the intentional relinquishment of a known right, or intentional conduct inconsistent with claiming that right.").

Further, the statements of Graham Glass and the unidentified female are parol evidence – prior statements that are inadmissible to vary the terms of a later, integrated License Agreement for Voyager 2.0.1.[70]

43. The License Agreement for Voyager specifically restricts the use of Voyager in any application that is "marketed or sold" or in any application that is "packaged with or embedded in hardware" and requires the licensee "to take all necessary steps to ensure that the terms and conditions of this [license] Agreement are not violated by any person or entity under the Licensee's control or in the Licensee's service."[71] Despite having, and agreeing, to these terms, Defendant would have the Court rely, not on the parties' agreement, but on hearsay statements prior in time to the agreement that were not even specific to Defendant's use of Voyager. In sum, Defendant failed to meet its summary judgment burden on the affirmative defense of express and/or implied license because (1) Defendant proffered no competent evidence in support of the claim; and (2) the evidence establishes the contrary of what Defendant claims (i.e. the Defendant entered into a novation or committed waiver).

**E. PLAINTIFF'S CLAIMS ARE NOT LIMITED TO DECEMBER 21, 2001 FORWARD, BUT INCLUDE ALL CLAIMS FROM THE INCEPTION OF DEFENDANT'S UNAUTHORIZED USE OF VOYAGER**

44. Defendant attaches a portion of the *Asset Purchase Agreement* (the *Assignment Agreement – Intellectual Property*) between Objectspace and Plaintiff, claiming that Objectspace

---

[70] Parol evidence bars any alleged express license that occurred prior to the time Plaintiff entered into the Voyager 2.0.1 License on December 23, 1998. *See* Def's App. 28-29; *See FDIC v. Wallace*, 975 F.2d 227, 229 (5th Cir. 1992) (The Supreme Court of Texas has defined the parol evidence rule as follows: "When parties have concluded a valid integrated agreement with respect to a particular subject matter, the rule precludes the enforcement of inconsistent prior or contemporaneous agreements." *Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 32 (1958)).

[71] *See* PL. APP. 82-83; 93-94; 109-110.

did not transfer claims for breach of contract or past copyright infringement. *See* Def's App. at p.

135-37.  However, a review of the *Asset Purchase Agreement* with attachments demonstrates that

Plaintiff obtained all rights to Voyager, including all rights and interest to Voyager and to sue for

past claims. *See* PL. APP. 1-2; 6-81 (Exhibit "A" at ¶ 3 and Exhibit A-1 attached thereto).

45.     Specifically, the *Asset Purchase Agreement* provides in Section 2.1(a),

"[Objectspace] agrees to sell, assign, transfer, convey and deliver to
[Plaintiff]… and [Plaintiff] agrees to purchase and acquire from
[Objectspace]…all of the right, title and interest of [Objectspace] in, to
and under the following assets (collectively the "Acquired Assets"): (i) the
Intangible Personal Property…

*See* PL. APP. 12.

46.     The *Asset Purchase Agreement* thereafter defines the following terms:

"Intellectual Personal Property" means the rights of [Objectspace] arising
under or in connection with the Intellectual Property, including (i) *all
licenses, sublicenses, and other agreements to which [Objectspace] is a
party and pursuant to which [Objectspace] or any other person is
authorized to use any of the Intellectual Property.* (Emphasis added.)

*See* PL. APP. 9.

"Intellectual Property" means the Software and, with respect to the
Software, … (d) copyrights … (j) all rights to products, proceeds, royalties
and income with respect to any of the foregoing, and (k) *all rights to sue
or recover and retain damages and costs and attorney's fees for present
and past infringement of an of the foregoing.*" (Emphasis added.)
*See* PL. APP. 9-10.

"Software" means the following lines of software owned by [Objectspace]:
the product lines known as 'Voyager'…and the other software items
described in the Intellectual Property Agreement [PL. APP. 68-78 – which
further describes the patents, trademarks and copyrights of Voyager].

*See* PL. APP. 11.

47.    Therefore, the *Asset Purchase Agreement* provides that the Voyager License Agreements were transferred to Plaintiff, including the rights to sue for breach of contract,[72] and the rights to sue for past copyright infringement.[73]

48.    Further, in the *Assignment Agreement* between Objectspace and Plaintiff executed February 14, 2002, the parties made it clear that the Voyager interests assigned also includes the right to assert claims for past copyright infringement. *See* PL. APP. 79 [Assignment Agreement] ("[Objectspace] does hereby sell, assign and transfer to [Plaintiff] ... all right, title and interest in all copyrights to the Works [defined to include all Voyager copyrights], any derivative works based on the Works, and any prior version of the Works, as well as any registrations issued therefore, *including the right to sue for past infringement...*") (emphasis added).[74]

### F. GENUINE ISSUES OF MATERIAL FACTS PRECLUDE SUMMARY JUDGMENT BASED ON DEFENDANT'S AFFIRMATIVE DEFENSE OF THE FAIR USE DOCTRINE

49.    The following material facts create genuine issues, singularly or jointly, that preclude summary judgment based on Defendant's affirmative defense pursuant to the fair use exception pursuant to the Copyright Act:

---

[72] *See Hallman v Safeway Stores, Inc.*, 368 F.2d 400, 403 (5th Cir. 1966) ("It is established Texas law that an assignee may maintain any action in his own name which the assignor may have brought, and unless the assignor has retained some interest therein, he, the assignor, is precluded from bringing suit.") (*citing* 1 McDonald, TEXAS CIVIL PRACTICE (1965 Rev. Vol.), 224, 225); *see also, UICI v. Gray*, 2002 U.S. Dist. LEXIS 3542, at *20-21 (N.D. Tex. March 1, 2002) (Texas law provides that an assignor is not longer a real party in interest); *Cadle Co. v 1007 Joint Venture*, 82 F.3d 102, 105 (5th Cir. 1996) ("An assignee stands in the shoes of his assignor."); *State Fidelity Mortg. Co. v. Varner*, 740 S.W.2d 477, 480 (Tex. App.—Houston [1st Dist.] 1987, writ denied) (An assignee obtains the right, title, and interest of his assignor at the time of his assignment. Accordingly, an assignee may recover those damages potentially available to his assignor.)

[73] *See Prather v Neva Paperbacks, Inc.*, 410 F.2d 698, 700 (5th Cir. 1969) (Express language in a copyright assignment to cover causes of action for past infringement permits the assignee to maintain an action for infringement for claims that accrued prior to the assignment).

[74] *Id.*

- Defendant admits that Voyager provides a "vital" component of Interaction Recorder. *See* PL. APP. 203 (Exhibit "F" at p. 32, lines 2-15).

- Defendant admits that if Voyager was removed from Interaction Recorder, the server would continue to function and operate, however the usefulness would be "seriously degraded" by not being able to access the server. *See* PL. APP. 147.

- Defendant testified that it took one year to remove Voyager from Interaction Recorder because of the difficulty in replacing Voyager. *See* PL. APP. 203 (Exhibit "F" at p. 29, line 12 through p. 32, line 1).

- Plaintiff provides evidence that the number of lines of software code in Interaction Recorder that reference Voyager has no bearing at all on the role Voyager plays in that application. A single reference to a single line of code (i.e. a single Voyager function) can be the most important part of that application if the capability referenced in the code is not available anywhere else and is necessary for the functioning of the application – as is the case with Voyager's use in Interaction Recorder. Without Voyager, the Interaction Recorder server functions are unavailable to the Interaction Recorder user. That is, the ability of an Interaction Recorder user to communicate with the server (and therefore use any of the functions of Interactive Recorder) are unavailable. *See* PL. SUPP. APP. 500.

- Plaintiff provides evidence that, if the correct function of an application depends on its ability to communicate with another application (as is the case with Voyager's function in Interactive Recorder), it is possible for that communication to take place with only 1 or 2 function calls into Voyager, but without which no communication can take place at all. The subtraction of Voyager would make the entire application inoperable to the user. *See* PL. SUPP. APP. 500.

- Plaintiff provides evidence that a single Voyager function used by the customer's application will itself reference a large number of other Voyager functions "behind the scenes", in much the same way that the turning of a small automobile ignition key causes the entire engine to turn over and set into motion the vehicle's other functions and equipment.  The net result is that by including only a few calls to Voyager functions, the customer's application is effectively including thousands of lines of Voyager code. This is the power of Voyager software and one of the reasons software engineers may prefer the use of Voyager instead of other object request broker software. By using Voyager, software engineers do not have to implement a significant amount of code (or include a significant amount of Voyager's functions) to gain a significant amount of functionality. *See* PL. SUPP. APP. 500.

- Plaintiff also refers the Court to the *Declaration of Thomas T. Wheeler* that details all of Interaction Recorder's uses of Voyager, including functionality not available

in other ORB software and functionality using five (5) of Voyager's fifteen (15) patents Plaintiff owns for Voyager. *See* PL. SUPP. APP. 504-511.

50.    Defendant attempts to ignore the "vital" communication function that Voyager provides for Interaction Recorder by performing inconsequential mathematical calculations in attempt to paint Voyager as only a "miniscule" part of Interaction Recorder.[75]  The testimony of Defendants' Interaction Recorder software developers provides otherwise.  Ganyo testified that, without Voyager, the ability to use Interaction Recorder would be "seriously degraded."[76] Likewise, Sheley testified that it took one year to remove Voyager from Interaction Recorder because of the difficulty of removing Voyager.[77]

51.    Based on Defendant's corporate representatives testimony and Plaintiff's evidence regarding Voyager's use in Interaction Recorder,[78] Defendant's use of Voyager is not *de minimus*, nor a fair use.  In applying the factors[79] to determine fair use, all weigh against a finding of fair use: (1) Defendant markets and sells Interaction Recorder—a commercial use;[80] (2) the copyrighted work is an original proprietary software program containing 15 patents;[81] (3) Voyager's use and importance to Interaction Recorder is substantial (as admitted by Defendant and set out above).[82]  Plaintiff's evidence details the substantial use of Voyager's functionality,

---

[75]  *See* PL. APP. 203 (Exhibit "F" at p. 32, lines 2-15).

[76]  *See* PL. APP. 147 (Exhibit "E" at p. 55, lines 9-25).

[77]  *See* PL. APP. 203 (Exhibit "F" at p. 29, line 12 through p. 32, line 1).

[78]  *See* PL. SUPP. APP. 499-501; 504-511.

[79]  *See* 17 U.S.C. § 107 (2000); *Compaq Computer Corp  v  Ergonome, Inc.*, 387 F.3d 403, 408 (5th Cir. 2004).

[80]  *See* Def's App. at p. 157; PL. APP. 126.

[81]  *See* PL. SUPP. APP. 504-511

[82]  *See* PL. APP. 147 (p. 55) and 203 (p. 29-32).

including functions unavailable in similar software and that utilize five (5) of Voyager's fifteen (15) patents.[83]  Further, Interaction Recorder would be inoperable to the user, as Voyager provides the communication application permitting the user to access and use information created and stored on the Interaction Recorder server.[84]  (4) Finally, regarding the fourth factor, Defendant's failure to pay Plaintiff a license fee on a per CPU basis of $1,500.00-$2,500.00 amounts to substantial deprived revenue and market for Plaintiff's Voyager software.[85]

52.    Based on a totality of the circumstances, all factors weigh against Defendant's burden to establish a fair use defense and preclude summary judgment.

### G.  GENUINE ISSUES OF MATERIAL FACTS PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT ACTION

53.    The following material facts create genuine issues that preclude summary judgment based on Defendant's various grounds that (1) there is no agreement; (2) lack of consideration; (3) no breach of agreement (no violation of license agreement restrictions) (non-party cannot breach) (no breach by persons in control/service of Defendant) (limitations) (speculative damages); (4) no demand for payment to recover attorney's fees.  Plaintiff presents the following genuine issues of material fact on each of the issues raised:

54.    There is a valid License Agreement by Plaintiff and Defendant.  As shown above, Plaintiff obtained all rights to the Voyager Software ("Voyager") through an Asset and Purchase Agreement with Objectspace, Inc. dated December 20, 2001, including all rights and interest to

---

[83]  *See* PL. SUPP. APP. 504-511.

[84]  *See* PL. SUPP. APP. 499-501.

[85]  *See* PL. APP. 3-4.

Voyager.[86]  Such interest included an assignment of the Voyager License Agreements.[87]  Upon

such assignment, Plaintiff stepped into the shoes of Objectspace[88] and there is privity of contract

between Plaintiff and Defendant such that Defendant owes its obligations to Plaintiff pursuant to

the Voyager License Agreement.[89]

   55.   There was consideration for the License Agreement.  As shown *supra*,

Defendant's reliance on an express (or implied) license is unsupported by the facts, and is barred

by the parol evidence rule, waiver and novation.  For the same reasons, Defendant's reliance on

the express license to claim a lack of consideration fails.  Defendant cannot rely on inconsistent

---

[86]  *See* PL. APP. 1-2 (Exhibit "A" at ¶ 3]; and PL. APP. 6-81 [*Asset Purchase Agreement* attached thereto as Exhibit "A-1" (including all attachments thereto)].

[87]  *See* PL. APP. 1-2; 6-81 (Exhibit "A" at ¶ 3 and Exhibit A-1 attached thereto).  Specifically, the *Asset Purchase Agreement* provides in Section 2.1(a):

   "[Objectspace] agrees to sell, assign, transfer, convey and deliver to [Plaintiff]... and [Plaintiff] agrees to purchase and acquire from [Objectspace]...all of the right, title and interest of [Objectspace] in, to and under the following assets (collectively the "Acquired Assets"): (i) the Intangible Personal Property... *See* PL. APP. 12.

   The *Asset Purchase Agreement* thereafter defines the following terms:

   "Intellectual Personal Property" means the rights of [Objectspace] arising under or in connection with the Intellectual Property, including (i) *all licenses, sublicenses, and other agreements to which [Objectspace] is a party and pursuant to which [Objectspace] or any other person is authorized to use any of the Intellectual Property.* (Emphasis added.) *See* PL. APP. 9.

[88]  *See Cadle Co. v. 1007 Joint Venture*, 82 F.3d 102, 105 (5th Cir. 1996) ("An assignee stands in the shoes of his assignor."); *State Fidelity Mortg. Co. v. Varner*, 740 S.W.2d 477, 480 (Tex. App.—Houston [1st Dist.] 1987, writ denied) (An assignee obtains the right, title, and interest of his assignor at the time of his assignment. Accordingly, an assignee may recover those damages potentially available to his assignor.).

[89]  *See* E. Farnsworth, CONTRACTS (3d Ed. 1999) § 11.3 ("To transfer a contract right is, in essence, to take from the assignor [Objectspace] and give to the assignee [Plaintiff] the right to performance by the obligor [Defendant].  Put another way, the transfer of a contract right extinguishes the assignor's right to performance by the obligor and gives the assignee a right to that performance.").

---

prior statements to alter the terms of the License Agreement that it entered.[90] Defendant

voluntarily elected to enter into the License Agreement to obtain Voyager 2.0.1.[91] Finally, such

agreement acts as a novation to any alleged express license (or grandfather clause argument).[92]

Moreover, to be able to use Voyager (legally), the consideration is the agreement to the License

Agreement terms and restrictions.

56.     If Defendant had such an express license, it could have contacted Objectspace –

explained the expected use of Voyager in Interaction Recorder, and determined whether it was

entitled to use Voyager under the alleged grandfather clause of express license. Defendant failed

to do so. Rather, Defendant downloaded Voyager 2.0.1 and agreed to the License Agreement.[93]

Thereafter, Defendant incorporated Voyager in Interaction Recorder and distributed it (and

allowed its Resellers to distribute it) in a manner that violates the License Agreement.[94]

---

[90] Parol evidence bars any alleged express license that occurred prior to the time Plaintiff entered into the Voyager 2.0.1 License on December 23, 1998. *See Def's App.* 28-29; *See FDIC v. Wallace*, 975 F.2d 227, 229 (5th Cir. 1992) (The Supreme Court of Texas has defined the parol evidence rule as follows: "When parties have concluded a valid integrated agreement with respect to a particular subject matter, the rule precludes the enforcement of inconsistent prior or contemporaneous agreements." *Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 32 (1958)).

[91] *See Bott v J R Shea Co., Inc.*, 299 F.3d 508, 513 (5th Cir. 2002) ("Waiver is defined in Texas as the intentional relinquishment of a known right, or intentional conduct inconsistent with claiming that right.").

[92] *See Chastain v. Cooper & Reed*, 250 S.W.2d 652, 659 (Tex. Civ. App.—Dallas 1952) (Elements of a novation: (1) existence of the prior valid obligation; (2) the agreement of the parties to a new contract; (3) which was a valid contract; (4) the extinguishment of the old contract by the substitution of the new valid contract); *Southern Poultry Processing, Inc v. Dewitt Farms*, 639 S.W.2d 702, 705 (Tex. App.—Tyler 1982) (It is not necessary for the new contract to provide expressly for the extinguishment of the old obligation).

[93] *See Def's App.* at pp. 28-29; *See* PL. APP. 202 (Exhibit "F" at p. 28, l. 10-14); and PL. APP. 219, 220-223 (Deposition Exhibits 22 and 23).

[94] *See* PL. APP. 2-3 (Exhibit "A" at ¶¶ 6-8, 11); and PL. APP. 82-87 (Exhibit "A-2"); PL. APP. 106-07 (Exhibit "C" at ¶¶ 4-7); PL. APP. 109-114 (Exhibits "C-1" and "C-2"); PL. APP. 470-72 and 477-78 (Exhibit "I" at p. 61, l. 14 through p. 63, l. 11; p. 66, l.3 through p. 69, l. 10); PL. APP. 496 (Deposition Exhibit N); PL. APP. 3, 86-87 (Exhibit "A" at ¶¶ 9-11 and Exhibit "A-2"); PL. APP. 106-07 (Exhibit "C" at ¶¶ 4-7].

57. <u>Terms of the License Agreement</u>. Defendant admits that it incorporated Voyager 2.0.1 in its own software, Interaction Recorder.[95] Defendant could not have obtained the versions of Voyager that it admits are included in Interaction Recorder without agreeing to the terms of the corresponding License Agreement[96] which is now an agreement with Plaintiff. In addition, Defendant admitted the License Agreements for Version 2.0.1 of Voyager were on its system and included with the Voyager product file[97] and that Defendant downloaded Voyager 2.0.1.[98]

58. The Voyager License Agreements for version 2.0.1 provides, in relevant part: [99]

> By downloading, using or copying Voyager(tm) or any portion thereof, Licensee agrees to abide by the intellectual property laws and all other applicable laws of the United States of America, and to all of the terms and conditions of this Agreement, **and agrees to take all necessary steps to ensure that the terms and conditions of this Agreement are not violated by any person or entity under the Licensee's control or in the Licensee's service.**
>
> Licensee may use Voyager(tm) internally for any purposes and in any systems provided that any distribution, sale or license of systems including Voyager(tm) or developed using Voyager(tm) to third parties are restricted as stated in this agreement. **Licensee may develop and distribute to third parties applications using Voyager(tm) that execute on general purpose computing platforms except as restricted below. Specifically, Licensee may distribute binaries (.class files) derived from or**

---

[95] *See* PL. APP. 199-200; 202-03 (Exhibit "F" at p. 16, line 15 through p. 18, line 23; p. 28, line 21 through p. 29, line 6).

[96] *See* PL. APP. 90 (Exhibit "B" at ¶ 4-5) and PL. APP. 99-100 (Exhibits "B-2" and "B-3"); *see also*, PL. APP. 145 (Exhibit "E" at p. 46, lines 2-6); PL. APP. 162-63 (Exhibit "E" at p. 28, line 14 through p. 29, line 6).

[97] *See* PL. APP. 202 (Exhibit "F" at p. 28, lines 10-14); and PL. APP. 219, 220-223 (Deposition Exhibits 22 and 23).

[98] *See* PL. APP. 150-51 (Exhibit "F" at p. 68, line 2 through p. 69, line 15); and PL. APP. 194 and 195 (Deposition Exhibits 9 and 10).

[99] *See* PL. APP. 2 (Exhibit "A" at ¶ 5); and PL. APP. 86-87 (Exhibit "A-3"); PL. APP. 89-90 (Exhibit "B" at ¶ 3); and PL. APP. 97-98 (Exhibit "B-1"); PL. APP. 106-107 (Exhibit "C" at ¶¶ 3-5); and PL. APP. 113-114 (Exhibits "C-1" and "C-2").

> contained within Voyager(tm) ("Binaries") provided that:
>
> **The Binaries are not packaged with, or embedded in, hardware.**
>
> **The Binaries are not packaged with, embedded in, distributed as part of, or publicly associated with any software that is marketed or sold.**

59.     Defendant sells Hardware using its Partners/Resellers.  Defendant markets its products to provide the customer a "whole product solution" – that is providing the customer with hardware, software and services.[100]  Defendant provides the whole product solution on *direct* sales by using partners or value added distributors to provide the hardware component.[101]

60.     Defendant Liable for Partners/Reseller's Actions per the License Agreement. Defendant admits that approximately seventy percent (70%) of its sales are through partners, distributors, resellers and value added resellers (collectively "resellers"[102]).[103]  Defendant uses these resellers to provide Defendant with sales, distribution and marketing *services*.[104]  In consideration of these services, the resellers receive Defendant's products at a discount, thus making money when reselling the products to the end user.[105]

61.     Defendant admits that it is aware and permits its resellers to sell its software, pre-

---

[100]   *See* PL. APP. 238, 239, and 248 (Exhibit "G" at p. 17, line 14 through p. 19, line 25; p. 22, line 23 through p. 23, line 12; p. 57, line 6 through p. 60, line 13); and PL. APP. 324, 328, 332 (Deposition Exhibits 10, 11, and 12).

[101]   *See* PL. APP. 242-43 and 254-55 (Exhibit "G" at p. 35, line 16 through p. 38, line 7; p. 82, line 17 through p. 85, line 13).

[102]   *See* PL. APP. 249 (Exhibit "G" at p. 62, lines 12-22).

[103]   *See* PL. APP. 239 (Exhibit "G" at p. 22, lines 14-19).

[104]   *See* PL. APP. 378 (Exhibit "H" at p. 49, lines 1-3]; *see also*, PL. APP. 242, 246, and 236 (Exhibit "G" at p. 35, lines 7-10; p. 49, lines 5-20; p. 11, lines 6-23).

[105]   *See* PL. APP. 376 (Exhibit "H" at p. 42, lines 2-21).

packaged, copied, or installed with the hardware.[106] Defendant even provides hardware services for its resellers[107] and allows hardware companies to sell Defendant's products.[108]

62.     Besides the sales, distribution and marketing services that are provided by resellers, Defendant's contracts with its resellers provide Defendant with extensive control over the activities permitted by its resellers, requiring (i) sales quotas, (ii) personnel trained and certified by Defendant, (iii) business plans, (iv) proper packaging, (v) delivery of license agreements, and (vi) to inspect records and invoices.[109] Defendant also refers to its resellers at its "authorized representatives."[110]

63.     One of Defendant's resellers, Alliance Systems, Inc., admits to selling Defendant's software copied and configured onto hardware sold simultaneously, including Interaction Recorder.[111]

---

[106] *See* PL. APP. 239-241, 244, 245, and 249 (Exhibit "G" at p. 22, line 23 through p. 31, line 10; p. 38, line 10 through p. 40, line 13; p. 42, line 24 through p. 43, line 6; p. 47, line 25 through p. 48, line 7; p. 62, line 1 through p. 63, line 2; and p. 72, lines 11-21]; and PL. APP. 280-81, 282-87, AND 288-297 (Deposition Exhibits 5, 6, 7, and 13); *see also*, PL. APP. 372 (Exhibit "H" at p. 25, line 12 through p. 27, line 3).

[107] *See* PL. APP. 241-42 (Exhibit "G" at p. 31, line 23 through p. 34, line 18); and PL. APP. 277-79 (Deposition Exhibit 3).

[108] *See* PL. APP. 247, 240-41, 243, 244, and 245 (Exhibit "G" at p. 54, line 14 through p. 55, line 14; p. 27, line 22 through p. 31, line 10; p. 39, lines 14-19; p. 42, line 24 through p. 43, line 6; p. 47, line 25 through p. 48, line 7); and PL. APP. 298-312, 280, 282, 87, 288-297 (Deposition Exhibits 8, 5, 6, and 7); *see also*, PL. APP. 371-72 (Exhibit "H" at p. 24, line 10 through p. 27, line 3).

[109] *See* PL. APP. 245-47 (Exhibit "G" at p. 48, line 14 through p. 54, line 9); and PL. APP. 298-312 (Deposition Exhibit 8); PL. APP. 248-251 (Exhibit "G" at p. 60, line 21 through p. 69, line 14); and PL. APP. 333-352 (Deposition Exhibit 13); PL. APP. 251-52 (Exhibit "G" at p. 72, line 24 through p. 73, line 20); and PL. APP. 353-63 (Deposition Exhibit 16).

[110] *See* PL. APP. 250-51 (Exhibit "G" at p. 68, line 18 through p. 69, line 14); and PL. APP. 345 (Deposition Exhibit 16); PL. APP. 253 (Exhibit "G" at p. 79, line 22 through p. 80, line 23); and PL. APP. 364 (Deposition Exhibit 17).

[111] *See* PL. APP. 371-72 (Exhibit "H" at p. 24, line 10 through p. 27, line 3); and PL. APP. 386-459 (Deposition Exhibits 8 and 9).

---

64.   <u>Defendant's Breach of the License Agreement.</u>[112]  Defendant admits that Interaction Recorder is a product that is marketed and sold.[113]  This is a violation of the Voyager 2.0.1 License Agreement.[114]

65.   The inclusion of Voyager 2.0.1 (or any other version of Voyager) in a product that is "packaged with, or embedded in, hardware" violates the License Agreement for Voyager 2.0.1.[115]

66.   <u>Plaintiff has Incurred Substantial Damages.</u>  Objectspace required license fees to be paid if the licensee (user) of Voyager intended to use Voyager in an application and distribute that application in a manner inconsistent with the terms of License Agreement.[116]  Likewise, after Plaintiff acquired all rights to Voyager, Plaintiff requires the payment of license fees, as well as annual support and maintenance, if the licensee of Voyager intends to use Voyager in an application and distribute that application in a manner inconsistent with the terms of License Agreement.[117]

67.   Currently, the amount charged to license the use of Voyager in a manner inconsistent with the License Agreements on a per unit basis would be $1,500.00 to $2,500.00

---

[112]  Defendant makes an argument that Plaintiff's breach of contract action fails against resellers. *See* Defendant's Memorandum in Support of Motion for Summary Judgment at p. 25.  To date, Plaintiff has only asserted breach of contract claims against Defendant.  Any argument regarding claims against Defendant's resellers is not at issue in Plaintiff's current pleading.

[113]  *See* PL. APP. 126 (Response No. 5).

[114]  *See* PL. APP. 3, 86-87 (Exhibit "A" at ¶¶ 9-11 and Exhibit "A-2"); PL. APP. 106-07 (Exhibit "C" at ¶¶ 4-7).

[115]  *See* PL. APP. 2-3 (Exhibit "A" at ¶¶ 6-8, 11); and PL. APP. 82-87 (Exhibit "A-2"); PL. APP. 106-07 (Exhibit "C" at ¶¶ 4-7); and PL. APP. 109-114 (Exhibits "C-1" and "C-2"); PL. APP. 470-72 and 477-78 (Exhibit "I" at p. 61, line 14 through p. 63, line 11; p. 66, line 3 through p. 69, line 10); PL. APP. 496 (Deposition Exhibit N).

[116]  *See* PL. APP. 3 (Exhibit "A" at ¶ 11).

per CPU or as negotiated between Plaintiff and the licensee.[118] Each unit is determined by the number of CPU(s) (processors) for each computer licensed to use the application (software) that includes Voyager.[119] In addition to the license fees, a mandatory maintenance and support fee for the first year of support is required in the amount of the total license fees multiplied by eighteen percent (18%).[120]

68.     In the instance of Defendant's Interaction Recorder Software, Defendant's invoices provide that customers purchase a server license and a workstation license for each remote user of Interaction Recorder.[121] To calculate the number of units for license of Voyager in such situation, it would be the multiplication of the number of server licenses multiplied by the percentage of CPU(s) running such server, plus the number of workstation licenses (assuming single CPU workstations).[122]

69.     For purposes of Interaction Recorder server licenses, Defendant admitted to Plaintiff that at least thirty percent (30%) of all of Defendants' server licenses operate on dual processors.[123] Therefore, Defendant's total number of server licenses would be multiplied by at least 1.3 plus the number of workstation licenses.[124] In addition to this equation would be the additional amount for mandatory first year maintenance and support calculated as the total amount of license fees multiplied by eighteen percent (18%).[125]

---

[117] *Id.*
[118] *See* PL. APP. 3 (Exhibit "A" at ¶ 12).
[119] *Id.*
[120] *Id.*
[121] *See* PL. APP. 3-4 (Exhibit "A" at ¶ 13).
[122] *Id.*
[123] *See* PL. APP. 4 (Exhibit "A" at ¶ 14).
[124] *Id.*
[125] *Id.*

70.     Defendant's argument that Plaintiff's damages are speculative based on the fact that the end users of Defendant's products could download Voyager for free is disingenuous at best.  Defendant is correct – anyone could have downloaded Voyager for free.  However, it is the combination of incorporating Voyager in another application in violation of one of the restrictions on use and distribution (as Defendant did) that gives rise to necessity to pay license fees.  Possession, or even most uses of Voyager alone would not give rise to a claim and damages.  Only actions, such as those taken by Defendant (using Voyager in a commercial product for sale and selling Voyager in a product packaged with hardware) violate the License Agreement and subject the party violating those terms to liability for damages.

71.     <u>Defendant is Liable for Plaintiff's Attorney's Fees.</u>  Defendant is correct that TEX. CIV. PRAC. & REM. CODE § 38.001 *et seq.* requires the "presentment of a claim" in order to recover attorney's fees.  However, Defendant is incorrect in alleging that a presentment has not been made by Plaintiff.

72.     It is well established that no particular form of demand is required.[126]  Nor is there any requirement the presentment include any mention of a sum or amount owing.[127]  Further, the statute is to be liberally construed to promote its purpose.[128]  Its purpose is to give an opportunity

---

[126] *See Jones v Kelley*, 614 S.W.2d 95, 100 (Tex. 1981); *Adams v Petrade Int'l, Inc* , 754 S.W.2d 696, 719 (Tex. App.—Houston [1ˢᵗ Dist.] 1988, writ denied); *Lilly v. Tolar*, No. 06-01-00163-CV, 2002 Tex. App. LEXIS 6092, at *31 (Tex. App.—Texarkana August 22, 2002, no pet.) (not designated for publication).

[127] *See Arch Constr., Inc. v. Tyburec*, 730 S.W.2d 47, 50 (Tex. App.—Houston [1ˢᵗ Dist.] 1987, writ ref'd n.r.e.); *Stuckey v. White*, 647 S.W.2d 35, 38 (Tex. App.—Houston [1ˢᵗ Dist.] 1982, no writ); *Lilly v Tolar*, No. 06-01-00163-CV, 2002 Tex. App. LEXIS 6092, at *31 (Tex. App.—Texarkana August 22, 2002, no pet.) (not designated for publication).

[128] *See Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981); *The Long Trusts v. Griffin*, 144 S.W.3d 99, 109 (Tex. App.—Texarkana 2004, pet. filed Nov. 2004).

to the one whom against whom a claim is asserted to satisfy the claim within thirty days after having notice of the claim without incurring an obligation to pay attorney's fees.[129]

73.    Courts have held that a long history of correspondence and negotiations between the parties can constitute a presentment[130] and that a letter requesting immediate return of property or compensation will be sought constitutes a presentment.[131]   Such is the case here. While Defendant only quotes a portion of the evidence, Plaintiff's presentment provides: "Consequently, demand is hereby made that Interactive Intelligence immediately obtain a return of all products containing the Software, or any portion thereof, and cease distributing any and all such products.  Alternatively, Recursion would be willing to license the Software for commercial deployment for a license fee of $1,500 per licensed CPU."[132]  Further, the presentment recognizes the negotiations and correspondence between the parties whereby Plaintiff made Defendant aware of its claims and attempted to resolve the issue.  A proper presentment pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001 *et seq.* was made and Plaintiff is entitled to attorney's fees.

---

[129] *See Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981); *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 719 (Tex. App.—Houston [1st Dist.] 1988, writ denied); *The Long Trusts v. Griffin*, 144 S.W.3d 99, 109 (Tex. App.—Texarkana 2004, pet. filed Nov. 2004).

[130] *The Long Trusts v. Griffin*, 144 S.W.3d 99, 109 (Tex. App.—Texarkana 2004, pet. filed Nov. 2004).

[131] *Lilly v. Tolar*, No. 06-01-00163-CV, 2002 Tex. App. LEXIS 6092, at *31 (Tex. App.—Texarkana August 22, 2002, no pet.) (not designated for publication).

[132] *See* PL. SUPP. APP. 514-517.

<u>CONCLUSION</u>

74.     Plaintiff's claims are not preempted by copyright due to the qualitative additional requirements provided by Plaintiff's claims and the License Agreements. Defendant's defenses requiring an element of knowledge (laches, waiver, estoppel, and limitations) on behalf of Objectspace all fail pursuant to Defendant's own testimony. Likewise, Defendant's defenses of express and implied license fail due to an absence of material facts necessary for Defendant to carry its burden, the parol evidence rule and due to facts establishing Defendant's waiver and novation regarding the License Agreement for Voyager 2.0.1. Finally, a substantial amount of evidence, including Defendant's own testimony regarding the importance of Voyager to the functionality of Interaction Recorder, makes the doctrine of fair use inapplicable.

75.     Plaintiff has established that it rightfully possesses its claims. Therefore, the jury should get to decide Defendant's liability and resulting damages from the unauthorized use and inclusion of Voyager in Interaction Recorder.

<u>PRAYER</u>

For these reasons, Plaintiff asks the Court to deny *Defendant Interactive Intelligence, Inc.'s Motion for Summary Judgment.* Plaintiff prays for such other and further relief to which it may be entitled, including expenses and attorney's fees for Defendant's bad faith *Statement of Scott Ganyo.*

Respectfully submitted,

By: _____

Andrew R. Korn
State Bar No. 11682150
John W. Bowdich
State Bar No. 00796233

KORN, BOWDICH & DIAZ, L.L.P.
4221 Avondale Avenue
Dallas, Texas 75219
(214) 521-8800 – Telephone
(214) 521-8821 – Telecopy
www.kbdtexas.com

ATTORNEYS FOR PLAINTIFF
RECURSION SOFTWARE, INC.

CERTIFICATE OF SERVICE

Pursuant to FED. R. CIV. P. 5(b), I certify a true and correct copy of the foregoing

document was served the 29th day of April, 2005, as follows:

Paul Overhauser                 VIA U.S. MAIL
OVERHAUSER LAW OFFICES
737 W. Green Meadows Dr., Ste 300
Greenfield, IN  46140

ATTORNEY FOR DEFENDANT

By: _____
        JOHN W. BOWDICH

## ------ NOTICE ------

## THIS SITE - ecf.txnd.uscourts.gov - IS TEMPORARILY OUT OF SERVICE

## Please try again later.

------------------------

**EXHIBIT "A"**